[No. B019773. Second Dist., Div. Seven. May 24, 1988.]

JUDITH VALENTINO, Plaintiff and Appellant, v.
ELLIOTT SAV-ON GAS, INC., Defendant and Respondent.

COUNSEL

Jerome H. Sklerov for Plaintiff and Appellant.

Thomas & Elliott and Dennis Neil Jones for Defendant and Respondent.

OPINION

**JOHNSON, J.** —In this case, we confront a fundamental issue in the interpretation of California's settlement incentive scheme. May costs be shifted against a prevailing party who rejected a statutory settlement offer (under Code Civ. Proc., § 998)[1] that would have required this party to forego other lawsuits as well as dismissing the one involved in the case at trial? The trial court answered this question in the affirmative. Neither the language, legislative intent, nor policy justification of section 998 supports this interpretation. Accordingly, we are compelled to reverse.

### FACTS AND PROCEEDINGS BELOW

On November 11, 1982, appellant Judith Valentino slipped and fell at a gasoline station owned by respondent, Elliott Sav-On Gas, Inc. (Sav-On). She filed suit and claimed serious physical injuries impairing her ability to perform certain routine tasks.

On May 25, 1984, Sav-On's attorney submitted a section 998[2] offer to allow judgment to Ms. Valentino's counsel. Included with the offer was a

---

[1] Unless otherwise indicated all statutory references are to the Code of Civil Procedure.

[2] Section 998 provides as follows: "(a) The costs allowed under Sections 1031 and 1032 shall be withheld or augmented as provided in this section.

"(b) Not less than 10 days prior to commencement of the trial as defined in subdivision 1 of Section 581, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken in accordance with the terms and conditions stated at that time. If such offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly. If such offer is not accepted prior to trial or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial.

"(c) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment, the plaintiff shall not recover his costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court, in its discretion, may require the plaintiff to pay the defendant's costs from the date of filing of the complaint and a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the defendant.

"Notice of Acceptance" which Ms. Valentino was to sign and file in the superior court within 30 days. In these documents Sav-On offered Ms. Valentino a total of $15,000. To receive payment of this sum, however, Ms. Valentino was required to file a "Notice of Acceptance" with the court which not only terminated the instant personal injury action against Sav-On but also released Sav-On, its attorneys and insurance carrier from any and all claims and causes of action arising out of appellant's claims including insurance bad faith and violation of Insurance Code section 790.03.

Ms. Valentino did not accept this section 998 offer. Over a year later, Sav-On's attorney made a more generous, but nonstatutory offer. This July 18, 1985, letter of counsel mentioned the mandatory settlement judge had opined Ms. Valentino's case was worth between $75,000 and $100,000. Accordingly, Sav-On and its insurance carrier were willing to offer $75,000 to settle the case. Ms. Valentino did not accept this offer either. Then on October 8, 1985, a month before trial Sav-On made another nonstatutory offer of $40,000 in cash and an annuity of $500 a month for life, guaranteed for 10 years. Ms. Valentino rejected this third offer, too, and the case went to trial on November 6, 1985.

At trial, Ms. Valentino testified her injuries had disabled her so much she could not engage in certain routine physical activities. She was impeached by motion pictures revealing she could and indeed was performing these activities. Thus despite medical evidence of pseudoarthrosis of the spine, past medical expenses of $7,186 and future medical expenses of $25,000, the jury returned an award of only $13,000, reduced by 25 percent for comparative negligence. This yielded a net verdict of $9,750, some $5,250 less than Sav-On's statutory offer of $15,000.

In posttrial motions, Ms. Valentino sought $7,177.61 in costs as the prevailing party pursuant to section 1032.[3] Sav-On resisted this request on

"(d) If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment, the court in its discretion may require the defendant to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the plaintiff, in addition to plaintiff's costs.

"(e) Police officers shall be deemed to be expert witnesses for the purposes of this section; plaintiff includes a cross-complainant and defendant includes a cross-defendant. Any judgment entered pursuant to this section shall be deemed to be a compromise settlement.

"(f) The provisions of this chapter shall not apply to an offer which is made by a plaintiff in an eminent domain action.

"(g) The costs for services of expert witnesses for trial under subdivisons (c) and (d) shall not exceed those specified in Section 68092.5 of the Government Code."

[3] Section 1032 provides in relevant part: "In the superior court, except as otherwise expressly provided, costs are allowed of course: [¶] (a) To plaintiff upon a judgment in his favor; in an action for the recovery of real property; in an action to recover the possession of person-

grounds (1) Ms. Valentino recovered less than the jurisdictional minimum for superior court and (2) had failed to achieve a damage award greater than Sav-On's statutory offer. Sav-On also sought its own costs pursuant to section 998 on grounds Ms. Valentino's damage award was less than the statutory offer. The trial court denied Ms. Valentino's request for her costs and granted Sav-On's motion for its costs in the amount of $13,244.40. As a result of these rulings, although she is the nominal prevailing party in this litigation, Ms. Valentino owes the "losing" party, Sav-On, a net $3,494.40, plus interest from December 2, 1985.

## Discussion

This case poses two questions. Did the trial court have power to deny Ms. Valentino her costs and award Sav-On its costs under section 998? Did the trial court abuse its discretion in denying Ms. Valentino her costs under section 1032?

### I. Costs Cannot Be Shifted Under Section 998 Where the Statutory Offer Requires Relinquishment of Claims in Addition to Those Contained in the Complaint Which Is the Basis of the Litigation Being Settled.

As a general rule in California, the prevailing party in civil litigation is entitled to its costs (but not its attorney fees). (§ 1032.) However, in a desire to encourage settlement of civil cases the Legislature has borrowed a controversial cost-shifting approach from England called the "payment into court" scheme.[4] Embodied in section 998, this approach authorizes either

---

al property; in an action for the recovery of money or damages; in a special proceeding; in an action which involves the title or possession of real estate or the legality of a tax, impost, assessment, toll, or municipal fine. [¶] [¶]

"(d) In all actions, whether mentioned in this section or not, if the prevailing party recovers a judgment that could have been rendered in a court inferior in jurisdiction in the county or city and county, such prevailing party shall not recover costs unless the judge, who presided at the trial, or, in the event of his inability for any reason to act, some other judge of the court, *in his discretion, makes an order, allowing costs or such part thereof as he deems proper.*"

[4] The English system is described and criticized in a study conducted by a noted English legal sociologist, Michael Zander. (See Zander, *Costs of Litigation—A Study in the Queen's Bench Division,* Law Society Gazette, (June 25, 1975) p. 680.) Zander analyzes the results of his statistical study to reveal this cost-shifting system creates unequal economic incentives in litigation where one of the litigants is an individual such as a customer or an injured claimant and the other is an institution such as a manufacturer, the government or an insurance company. The institutional litigant has many cases and is able to average the risk of losing—and thus having to pay the other party's costs—across all those cases. For the individual litigant, on the other hand, this typically is a once in a lifetime event. An erroneous guess cannot be made up in future cases. This fear of losing economically even while "winning" the trial, Zander's study suggests, pressures many individual litigants to accept settlement offers less generous than they would win at trial.

party to submit a written, binding settlement offer. If the other party chooses to refuse this offer, it proceeds to trial at its own risk. Even if the refusing party prevails at trial it must obtain a judgment more favorable than the settlement offer or it will not receive its own costs and, moreover, will be liable for it's opponent's costs.

In this case, we confront a fundamental issue in construction of California's cost-shifting system. May costs be shifted against a prevailing party who rejected a settlement offer that would have required it to forego other lawsuits as well as dismissing the one involved in the case at trial?

Section 998 provides either party may "serve an offer in writing upon any other party to the action to allow judgment to be taken in accordance with the terms and conditions stated at that time. . . . If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment, the plaintiff shall not recover his costs and shall pay the defendant's costs from the time of the offer. In addition, . . . the court, in its discretion, may require the plaintiff to pay the defendant's costs from the date of filing of the complaint and a reasonable sum to cover costs of the services of expert witnesses, . . . ." (§ 998, subds. (b), (c).)

Sav-On argues its requirement Ms. Valentino release the company, and its attorneys and its insurance carrier from liability for bad faith or any other causes of action related to the claim being tried is merely a "term and condition" of the offer and expressly authorized by section 998. According to this reasoning the only critical factor in the offer is the sum of money the plaintiff is to receive if she accepts the offer. If the plaintiff obtains a damage award at trial the amount of which is less than the sum of money mentioned in defendant's offer she loses her entitlement to her costs as the prevailing party and is subject to a court order to pay defendant's costs.

The language of the statute is more general, however. It does not describe the "offer" in monetary terms nor authorize cost-shifting every time the *monetary* value of the damage award is less than the *monetary* "term" of the defendant's statutory offer. Instead an "offer" includes all its terms and conditions and must be evaluated in the light of all those terms and conditions. Furthermore, a plaintiff is subject to cost-shifting only if she fails to obtain a judgment "more favorable" than the value of the statutory offer, again including all its terms and conditions.

Other terms or conditions of a statutory offer may effectively negate the monetary term of the offer. Thus, a tender of $15,000 to be paid in Confederate dollars would be no offer at all. Or the other terms and conditions may impose preconditions to receipt of the money which the courts will refuse to

honor. Thus, a tender of $15,000 conditioned on the plaintiff moving to another state or never marrying might be deemed to impose conditions which are against public policy and thus not to be encouraged by the courts. Or, the other terms and conditions may reduce the actual value of the monetary term so that a damage award in a lesser sum actually would be "more favorable" not less favorable than the statutory offer the defendant made. Or finally, the other terms and conditions may render it difficult to accurately value the monetary term of the offer so the court cannot fairly determine whether the damage award is "more favorable" or less favorable than the statutory offer.

Taken together, the terms and conditions of the statutory offer in this case are subject to at least two of the above infirmities. First, these terms and conditions reduce the value of the $15,000 monetary term so much that the damage award the jury returned may well be "more favorable" than the monetary term of the statutory offer. Secondly, the other terms and conditions of the statutory offer make it extraordinarily difficult to accurately and fairly evaluate the monetary term to decide whether the damage award did or did not exceed the amount offered in settlement of the instant case.

Both of these infirmities arise from the "term and condition" requiring Ms. Valentino to surrender other causes of action not embodied in the complaint being litigated in the instant case. Evaluated in the light of this condition, the monetary term of the offer is not really $15,000 *to settle the causes of action at issue in the instant case.* Instead that $15,000 is diluted by the worth of other present and future possible causes of action Ms. Valentino must surrender in order to receive the defendant's cash. Most or indeed all of the $15,000 actually may represent a payment to be released from potential bad faith or other claims against the insurance company, the lawyer, or the insured rather than a payment to settle the instant case. If the portion of the $15,000 monetary term reasonably allocated to the settlement of other claims exceeded $5,250, then the monetary term of the offer in settlement of the instant case would be less than the $9,750 the jury awarded Ms. Valentino. Accordingly, she would have obtained a judgment "more favorable" than Sav-On's statutory offer and thus could not be charged with Sav-On's litigation costs under section 998.

In retrospect, of course, Ms. Valentino's bad faith claim appears valueless and it is hard to conjure any other claims she could file against this defendant, its attorney, or insurance company. But the value of these claims must be measured as of the time Sav-On made its statutory offer and without the benefit of hindsight. Up to that point Sav-On and its insurance company had refused to make any reasonable payment to Ms. Valentino thus necessitating the filing of a lawsuit. It was now two years after the injury and deep

into the litigation with thousands of dollars of medical bills already incurred, and Sav-On was making its first offer. That offer was only $15,000 on a $350,000 claim which a neutral judge later valued to be worth at least $50,000. Furthermore, as we have seen, the $15,000 offer was not really $15,000 for this $350,000 claim but for this claim and a number of other potential claims against several defendants including those not involved as parties in this case. As of the time the statutory offer was made, there was a real possibility Sav-On and it's insurance company would maintain this rigid posture throughout the litigation. There was an equal possibility the litigation would conclude in a generous judgment in plaintiff's favor, thus opening the way for a substantial bad faith claim against Sav-On's insurance company. Based on Sav-On's behavior up to the time of the statutory settlement offer, and considering its exposure to substantial punitive damages should a bad faith claim prove successful, we conclude it would be difficult to evaluate the potential bad faith claim as worth anything less than $5,250 as of that time. (If Ms. Valentino had a 10 percent chance of winning even $60,000 on such a claim, it would be worth more than $5,250.) Consequently, the portion of the $15,000 monetary term of the settlement offer reasonably allocated to the instant case almost certainly is less than the $9,750 the jury awarded Ms. Valentino and thus she achieved a more favorable result at trial than the statutory offer Sav-On tendered.

Despite our confidence the bad faith claim was almost certainly worth *at least* $5,250 at the time of the statutory offer, we ordinarily would remand this issue to the trial court for a hearing and factual finding. However, this brings us to the second infirmity in the condition Sav-On attached to the monetary term of its statutory offer. It has introduced an imponderable which makes it impractical if not impossible to accurately and fairly evaluate the offer.

To pinpoint the value of the various potential unfiled claims Ms. Valentino might have had at the time of the statutory offer or in the future against three different parties, only one of whom was even a party to the instant action, would require the court to engage in wild speculation bordering on psychic prediction. Merely identifying all the potential claims would take some clairvoyance as well as the collection of a host of facts unrelated to the merits of the instant case—details about the pre- and postfiling behavior of Sav-On, its insurance company, and the lawyer, any investigators it might have employed, the insurance company's practices in like cases, etc., etc., etc. After all the potential causes of action had been identified, the court would then have to gather further facts about the apparent probabilities of success and possible recoveries for each as they would have appeared at the time of the statutory offer. Then it would have had to arrive at estimates as

to all these variables and calculate an estimated value for each individual potential claim, cumulate those estimated values, and determine whether the total exceeded $5,250. By this time, the court would be engaged in pure guesswork.

In a somewhat analogous context, a court has ruled costs should not be shifted where the court must determine how to allocate a settlement offer among the causes of action of several coplaintiffs. In *Randles* v. *Lowry* (1970) 4 Cal.App.3d 68 [84 Cal.Rptr. 321], the defendant had offered to settle the severable causes of action of three plaintiffs for a total of $2,300 pursuant to a predecessor to section 998, that is, former section 997 (repealed 1971). At trial, the three plaintiffs received damage awards which added up to less than $2,300. Nonetheless, the court refused to shift defendant's costs to any of the three coplaintiffs. The court held it "impossible to say that any one plaintiff received a less favorable result than he would have under the offer of compromise." (*Id.* at p. 74.)

In *Randles* the statutory offer was made to simultaneously settle several causes of action brought by different individuals and the court did not feel it could allocate the defendant's offer among those causes of action. Here the different causes of action involve a single plaintiff. But the principle is the same. Neither this court nor the trial court can be expected to properly allocate defendant's offer between the personal injury causes of action involved in the instant litigation and the several other causes of action she is being asked to surrender. The *Randles* court found it impossible to say whether any individual plaintiff received a less favorable result on his cause of action than he would have under the offer of compromise because it could not determine how much of the total offer related to that plaintiff's cause of action as opposed to his coplaintiffs' causes of action. Similarly, this court finds it impossible to say whether Ms. Valentino received a less favorable result on her personal injury cause of action than she would have under defendant's statutory offer because we cannot determine how much of that total offer related to those personal injury causes of action as opposed to the other potential causes of action she was required to surrender.

It would be hard enough for a trial court to place a value on a condition requiring the plaintiff to dismiss a single specific lawsuit she had already filed against the defendant in another court. But when the condition mandates surrender of an array of potential lawsuits against not only the defendant but two other parties the task becomes impossible. Even if it were possible, it would not be worth the cost. Recalling the underlying purpose of section 998 is to promote judicial economy, this court is not about to encourage defendants to add conditions to their statutory offers which introduce so much uncertainty to those offers the courts must spend hours or

days sorting them out to determine whether plaintiffs have achieved a more favorable result at trial.

For all the above reasons we conclude Sav-On's statutory offer was ineffective to shift costs to Valentino under section 998. Accordingly, under the terms of section 998, subdivision (c) this offer cannot justify either a denial of costs to Valentino or a grant of costs to Sav-On.

## II. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING APPELLANT HER COSTS PURSUANT TO SECTION 1032.

We have concluded the trial court lacked the power under section 998 either to grant Sav-On its costs or to deny Ms. Valentino her costs. This ends the matter as to Sav-On's claim for its costs, but not as to Valentino's claim for hers. ▉ The trial court rested its denial of Valentino's claim on both sections 998 and 1032, subdivision (d). The latter confers discretion on the superior court judge to deny a prevailing plaintiff her costs if the judgment she received in superior court was within the jurisdictional limit of municipal court.[5]

In this case, the jury returned a net verdict of $9,750, which is well below the maximum amount she could have received in a municipal court proceeding. Thus she was not entitled to her costs unless the trial court exercised its discretion to award her those costs.

The apparent purpose of section 1032, subdivision (d) is to discourage plaintiffs from "over filing" their cases. When litigants bring cases in superior court which properly belong in municipal court it wastes judicial resources and drains clients' wallets. By doing so, they invoke the more extensive and expensive procedures the judicial system reserves for higher stakes cases. An archtypical case would be one where it was apparent at the time of filing that the injuries the plaintiff sustained were unlikely to support a judgment higher than a few thousand dollars. Yet plaintiff's counsel insisted on filing the complaint in superior court and prayed for damages in excess of the jurisdictional limit of municipal court knowing full well or at least reasonably suspecting his case was not worth that much.

The instant case does not fit the pattern of this archetype, however. Here at the time the plaintiff filed her complaint she had good reason to believe

---

[5]Section 1032, subdivision (d) reads in pertinent part: "In all actions, whether mentioned in this section or not, if the prevailing party recovers a judgment that could have been rendered in a court inferior in jurisdiction in the county or city and county, such prevailing party shall not recover costs unless the judge, who presided at the trial, or, in the event of his inability for any reason to act, some other judge of the court, in his discretion, makes an order, allowing costs or such part thereof as he deems proper."

she belonged in superior court not municipal court. Her medical bills and other expenses were at a level ordinarily associated with damage awards in excess of the jurisdictional limit of municipal court. Moreover, nothing happened throughout the pretrial phases of the litigation to suggest her initial filing decision was wrong and she should seek a transfer to municipal court. A neutral settlement judge evaluated her case as worth double to quadruple the maximum amount a municipal court could grant her. And, as the trial approached in superior court, the defendant corporation itself offered her a settlement more than twice what she could have received in municipal court.

For these reasons, it would appear Valentino was operating in good faith and in the most reasonable manner when she brought and pursued this case in superior court rather than municipal court. If such were the case we might well have reversed this trial court for refusing Valentino's request for her costs even though she could have won the same judgment in municipal court. The purposes of section 1032, subdivision (d) are not served by denying costs to litigants who in good faith and with sound reasons file in superior court then suffer the surprise of an unexpectedly low jury verdict.

But this case has a further wrinkle. By Valentino's own admission, the jury came back with this unforeseeably low verdict because the defense demonstrated she had not sustained the degree of injury and loss of function she claimed. Moreover, Sav-On did so by proving she lied on the stand when she claimed to be unable to do what the defendant's film showed she could. Thus, the court could have reasonably found that Valentino's pursuit of this claim in superior court rather than municipal court was based not on a good faith and reasonable assessment of the value of her case but on her own false claims she had suffered a greater loss of function than she had. In these circumstances, it is within the trial court's discretion to determine a plaintiff should not be entitled to her costs where the judgment she received was below what she could have obtained in a lower court.

## DISPOSITION

The judgment is reversed insofar as it orders appellant Valentino to pay respondent Sav-On its costs but is affirmed insofar as it refuses appellant

Valentino her costs under section 1032, subdivision (d). Appellant to receive her costs on appeal.

Lillie, P. J., and Reese, J.,* concurred.

A petition for a rehearing was denied June 23, 1988, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied August 18, 1988.

---

* Assigned by the Chairperson of the Judicial Council.