Filed 8/3/16

**CERTIFIED FOR PUBLICATION**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION EIGHT

| | |
|---|---|
| YOLANDA LACHI IGNACIO, | B266930 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC511878) |
| v. | |
| MARILYNNE CARACCIOLO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Charles Palmer, Judge.  Affirmed.

Mark R. Weiner & Associates and Kathryn Albarian for Defendant and Appellant.

Layfield & Barrett, Philip J. Layfield, and Christopher M. Blanchard for Plaintiff and Respondent.

_____

Yolanda Lachi Ignacio, the plaintiff in a personal injury action, was offered $75,000 by defendant Marilynne Caracciolo to settle the action under certain terms, including that plaintiff execute a release. Plaintiff rejected the offer, and subsequently obtained a judgment against defendant for $70,000. Defendant sought to tax plaintiff's costs, and obtains her own costs, pursuant to Code of Civil Procedure section 998.[1] The trial court concluded defendant's settlement offer was invalid under section 998, and denied her the cost-shifting benefits of that statute. Defendant appeals. Because the release defendant submitted to plaintiff as part of her settlement offer sought to release defendant and others from claims outside the scope of the current personal injury action, it rendered the offer invalid under section 998. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 10, 2013, plaintiff was injured in an "auto versus pedestrian" accident; she was struck by defendant's vehicle. On June 11, 2013, plaintiff filed suit against defendant, alleging causes of action for motor vehicle and general negligence.[2]

On March 20, 2015, counsel for defendant conveyed to counsel for plaintiff a settlement offer under section 998. Defendant offered to settle for $75,000 plus costs incurred as of the date the offer was served, "in exchange for a release (exemplar attached for purposes of identifying material terms of the release) and dismissal without prejudice of the complaint filed by . . . [plaintiff]."

Attached to the offer was a document entitled "RELEASE OF ALL CLAIMS," which was two pages long, single spaced. The first paragraph provides as follows: "For and in consideration of the sum of $75,000.00, paid by draft issued by State Farm . . . [1] to [plaintiff], [plaintiff], on behalf of herself and her dependents, heirs, executors,

---

[1]    All undesignated statutory references are to the Code of Civil Procedure.

[2]    Robert Nicolas Caracciolo was also named as a defendant. The record on appeal does not indicate the disposition of plaintiff's action against him, but he appears to have been out of the case by the time of the settlement offer.

administrators, and assigns (hereinafter collectively referred to as 'Releasors'), [2] hereby fully and forever release and discharge [defendant], each of her partners, employees, agents, personal representatives, insurers, attorneys, successors or predecessors in interest, assigns, subsidiaries, past and present, any other person while using [defendant]'s vehicle within the scope of consent of [defendant] on or about April 10, 2013, and any other person or organization who is or might be liable for [defendant]'s alleged negligent use of a vehicle on or about April 10, 2013 (hereinafter collectively referred to as 'Releasees'), [3] from any and all claims, demands, liens, agreements, contracts, covenants, actions, suits, causes of action, obligations, controversies, debts, costs, expenses, damages, judgments, orders, and liabilities *of whatever kind and nature in law, equity, or otherwise, whether now known or unknown, suspected or unsuspected, that have existed or may have existed or which do exist, or which hereinafter can, shall or may exist*, [4] including but without, in any respect, limiting the generality of the foregoing, any and all claims that were, or might, or could have been alleged in connection with an accident that occurred on or about April 10, 2013, and are the subject of the lawsuit entitled *Ignacio v. Caracciolo*, filed in the Los Angeles Superior Court, bearing case number BC511878 ('Lawsuit')."[3]  (Italics added.)

Another provision of the release waived the protections of Civil Code section 1542, which provides that a general release does not extend to claims not known or suspected at the time of execution of the release.  That provision also provided, "Releasors agree the Release of All Claims shall constitute a full release in accordance with its terms and acknowledge and agree that this waiver [of Civil Code section 1542] is an essential and material term of this Release of All Claims and the settlement that led to it, and that without such waiver, the settlement would not have been entered into."

Plaintiff did not accept the offer, and the case proceeded to trial.  At trial, the jury concluded plaintiff's damages were $100,000, but that she was 30 percent comparatively

---

**3**    We have identified, in brackets, four parts of the release to facilitate our discussion of its essential terms.

3

negligent, while defendant was 70 percent responsible. This resulted in a judgment in plaintiff's favor for $70,000.

Because the $70,000 judgment was less than the $75,000 offered, defendant believed the section 998 cost-shifting procedures applied. In contrast, plaintiff believed defendant's settlement offer was invalid under section 998, and that plaintiff was entitled to her costs as the prevailing party. Competing cost memoranda and motions to tax costs were filed.[4]

Plaintiff challenged the validity of defendant's settlement offer on three bases: (1) as it offered a dismissal without prejudice, it did not offer a final resolution equivalent to a judgment; (2) it attached only an "exemplar" release, leaving plaintiff to guess at the actual release terms sought by defendant; and (3) it sought a general release of claims beyond the scope of the current litigation.

At the hearing on the first motion addressing the issue of the validity of defendant's offer, defendant's counsel argued that the offer was limited only to the claims that arose out of plaintiff's complaint. Plaintiff's counsel responded that the release would have encompassed other potential claims, suggesting as an example a claim for invasion of privacy against defendant, her investigator, and her attorney, on the basis that they had "potentially invaded [plaintiff's] privacy and had potentially violated certain eavesdropping statutes." Plaintiff's counsel argued that plaintiff was not prepared to release that claim as part of the proffered settlement, but the exemplar release would have required her to release it. Defendant's counsel was unable to clearly state whether the release would have encompassed the identified privacy claim, leading the court to question whether the scope of the release was ambiguous. The following day, on the hearing on the next motion, defendant's counsel stated that the release absolutely would

---

**4** Plaintiff also filed a motion to sanction defendant and her counsel for filing a frivolous memorandum of costs, on the basis that no reasonable person could believe the offer to have been a valid section 998 offer. Sanctions were ultimately denied, and the disposition of the sanctions motion is not at issue on appeal. It is relevant only because it was the third motion raising the issue of the validity of defendant's section 998 offer, and, as it happens, it was argued first.

not reach the invasion of privacy claim, because "our general release . . . absolutely tailors it to anything arising out of the accident. [¶] The investigation, the sub rosa investigation is an entirely different matter."

The trial court took the matters under submission, and ultimately ruled in favor of plaintiff, concluding that defendant's settlement offer was invalid under section 998. The court struck defendant's cost memorandum, and denied her motion to tax plaintiff's costs in all relevant respects.[5]

Defendant filed a timely notice of appeal from this post-judgment order.

## DISCUSSION

1. *Standard of Review*

We independently review whether a section 998 settlement offer was valid. In our review, we interpret any ambiguity in the offer against its proponent. (*Chen v. Interinsurance Exchange of the Automobile Club.* (2008) 164 Cal.App.4th 117, 122 (*Chen*).) The burden is on the offering party to demonstrate that the offer is valid under section 998. (*Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 799 (*Barella*).) The offer must be strictly construed in favor of the party sought to be bound by it. (*Ibid.*)

2. *Section 998*

"As a general rule, the prevailing party in a civil lawsuit is entitled to recover its costs. (Code Civ. Proc., § 1032.) However, section 998 establishes a procedure for shifting the costs upon a party's refusal to settle. If the party who prevailed at trial obtained a judgment less favorable than a pretrial settlement offer submitted by the other party, then the prevailing party may not recover its own postoffer costs and, moreover, must pay its opponent's postoffer costs, including, potentially, expert witness costs. (§ 998, subd. (c)(1).)" (*Barella, supra,* 84 Cal.App.4th at p. 798.)

---

[5] The motion to tax costs was granted with respect to a few line items not at issue on appeal.

5

3.     *A Release Going Beyond the Scope of the Current Litigation Renders the*
       *Settlement Offer Invalid Under Section 998*

It is well-established that a purported section 998 offer "requiring the release of claims and parties not involved in the litigation is invalid . . . ." (*McKenzie v. Ford Motor Company* (2015) 238 Cal.App.4th 695, 706.) "That limitation exists because of the difficulty in calculating whether a jury award is more or less favorable than a settlement offer when the jury's award encompasses claims that are not one and the same with those the offer covers. [Citations.]" (*Chen, supra,* 164 Cal.App.4th at pp. 121-122.) If the settlement offer includes "terms or conditions, apart from the termination of the pending action in exchange for monetary consideration, that make it exceedingly difficult or impossible to determine the value of the offer to the plaintiff," the offer is invalid under section 998. (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 766 (*Fassberg*).) Requiring resolution of potential unfiled claims not encompassed by the pending action renders the offer incapable of valuation. (*Valentino v. Elliott Sav-On Gas, Inc.*(1988) 201 Cal.App.3d 692, 699-700 (*Valentino*).)

In *Valentino*, the plaintiff slipped and fell at the defendant's gas station and sued for her physical injuries. The defendant made a section 998 offer for $15,000 in settlement of not only the plaintiff's personal injury action, but other potential claims she might possess against its attorneys and insurer, including bad faith. (*Valentino, supra,* 201 Cal.App.3d at pp. 694-695.) When the jury awarded the plaintiff less than $10,000, the defendant successfully moved to shift costs under section 998. The Court of Appeal reversed, on the basis that the section 998 offer was invalid, in that it could not be determined how to value the other claims the plaintiff would have given up if she had accepted the offer. "To pinpoint the value of the various potential unfiled claims Ms. Valentino might have had at the time of the statutory offer or in the future against three different parties, only one of whom was even a party to the instant action, would require the court to engage in wild speculation bordering on psychic prediction. Merely identifying all the potential claims would take some clairvoyance as well as the collection

6

of a host of facts unrelated to the merits of the instant case - details about the pre- and postfiling behavior of [the defendant], its insurance company, and the lawyer, any investigators it might have employed, the insurance company's practices in like cases, etc., etc., etc. After all the potential causes of action had been identified, the court would then have to gather further facts about the apparent probabilities of success and possible recoveries for each as they would have appeared at the time of the statutory offer. Then it would have had to arrive at estimates as to all these variables and calculate an estimated value for each individual potential claim, cumulate those estimated values, and determine whether the total exceeded [the] $5,250 [difference between the amount offered and the plaintiff's recovery at trial]. By this time, the court would be engaged in pure guesswork." (*Id*. at pp. 699-700.)

Indeed, because the proponent of the offer has the burden of establishing its validity, *ambiguity* as to whether the offer encompasses claims beyond the current litigation is sufficient to render the offer invalid under section 998. (*Chen, supra,* 164 Cal.App.4th at p. 122, fn. 5.)

4.      *Defendant's Release was Overbroad, Invalidating the Offer Under Section 998*

We turn to the language of the exemplar release attached to the defendant's offer, which we have quoted extensively on pages 2 and 3. Part [1] states: "**For and in consideration of the sum of $75,000.00, paid by draft issued by State Farm . . . to [plaintiff], [plaintiff], on behalf of herself and her dependents, heirs, executors, administrators, and assigns (hereinafter collectively referred to as 'Releasors'), . . .**" (Emphasis added.) This language simply identifies the releasors and, in and of itself, does not invalidate the offer under section 998.

Part [2] continues: "**[The releasors] hereby fully and forever release and discharge [defendant], each of her partners, employees, agents, personal representatives, insurers, attorneys, successors or predecessors in interest, assigns, subsidiaries, past and present, any other person while using [defendant]'s vehicle within the scope of consent of [defendant] on or about April 10, 2013, and any other person or organization who is or might be liable for [defendant]'s alleged negligent**

7

**use of a vehicle on or about April 10, 2013 (hereinafter collectively referred to as 'Releasees') . . . .**" (Emphasis added.) This language identifies the releasees. Boilerplate language identifying individuals and entities beyond the named parties in the case as releasors and releasees does not invalidate the offer, if the claims released relate only to the subject matter of the current litigation. (*Fassberg, supra,* 151 Cal.App.4th at p. 767.) Standing alone, part [2] does not invalidate the release, as long as the release is limited to claims arising from the accident at issue in the lawsuit.

Pursuant to part [3], the releasors release the releasees "**from any and all claims, demands, liens, agreements, contracts, covenants, actions, suits, causes of action, obligations, controversies, debts, costs, expenses, damages, judgments, orders, and liabilities of whatever kind and nature in law, equity, or otherwise, whether now known or unknown, suspected or unsuspected, that have existed or may have existed or which do exist, or which hereinafter can, shall or may exist, . . .**" (Emphasis added.) Similarly, the Civil Code section 1542 waiver refers to the release as a "**full release**," and implies that the release is a "**general release**."[6] (Emphasis added.) The language is incredibly broad, and encompasses numerous claims the releasors may have against the releasees beyond those at issue in the lawsuit.

Defendant relies on *Goodstein v. Bank of San Pedro* (1994) 27 Cal.App.4th 899, 907-908 (*Goodstein*) for the proposition that a general release does not necessarily invalidate a section 998 offer. While the statement on its face may often be correct, a lack of precision in terminology may have given rise to some confusion. Historically, a "general release" was a release "which was phrased broadly enough to include unknown claims," while a specific release did "not extend to unknown claims." (*Casey v. Proctor* (1963) 59 Cal.2d 97, 109.) In *Goodstein*, the defendant's section 998 offer had sought a "general release." In concluding the offer was nonetheless valid, the court interpreted the

---

**6**     The implication arises because of the reference to Civil Code section 1542. Civil Code section 1542 applies only to "general release[s]." If defendant's release were not a general release, there would be no need for it to include an express waiver of the protections of Civil Code section 1542.

8

offer's reference to a "general release" to refer only to the litigation in which it was offered. (*Goodstein,* at pp. 907-908.) The Court of Appeal affirmed over a dissent, which argued that a general release has no place in a section 998 offer. (*Id*. at p. 911 (dis. opn. of Johnson, J.).) Justice Johnson's dissent noted, "The majority seeks to characterize the 'general release' in this case as somehow confined to the precise causes of action that were being litigated in this case. Thus, according to that opinion, the offer does not suffer from any of the vices which bother me." (*Id*. at p. 916.) He disagreed, however, with that interpretation of the release, because "[a]s commonly used among lawyers, in judicial decisions and in statutes, [a general release] would bar actual or potential causes of action beyond those embodied in the specific litigation that would go to trial if he rejected the offer." (*Ibid.*) In other words, the *Goodstein* majority upheld the validity of the section 998 offer by construing the term "general release" more narrowly than its then-established common meaning. The rule to be taken from *Goodstein* is not that a "general release" does not invalidate a section 998 offer; the rule is that a release of unknown claims arising only from the claim underlying the litigation itself does not invalidate the offer. (See *Linthicum v. Butterfield* (2009) 175 Cal.App.4th 259, 272.)

But, the release here is not so limited. It applies not just to all claims arising out of the April 10, 2013 accident, but to "any and all claims" the releasees may have against the releasors "whether now known or unknown, suspected or unsuspected, that have existed or may have existed or which do exist, or which hereinafter can, shall or may exist . . . ." Such an unlimited release goes well beyond the scope of the litigation, and renders the offer invalid under section 998.

Defendant relies on part [4] of the release, which states, "***including but without, in any respect, limiting the generality of the foregoing*, any and all claims that were, or might, or could have been alleged in connection with an accident that occurred on or about April 10, 2013, and are the subject of the lawsuit entitled *Ignacio v. Caracciolo*, filed in the Los Angeles Superior Court, bearing case number BC511878 ('Lawsuit').**" (Emphasis and italics added). Noting that the latter part of this language refers to claims which were or could have been alleged in connection with the accident

9

giving rise to this lawsuit, defendant takes the position that the release was limited to those accident-related claims. But this argument takes the language out of the context of the release, utterly ignoring the part of the release we have italicized above. The release does not say it is "limited to" such accident-related claims; it says the opposite. The general release includes, but is not in any way limited to, accident-related claims.[7]

Moreover, plaintiff identified before the trial court a claim that would be encompassed by the release that was not accident-related and could not have been brought in the pending lawsuit – her claim against defendant, her attorney, and her investigator for violation of plaintiff's privacy rights during the carrier's investigation of her claim. The release specifically identifies defendant and her attorney as released parties; whether it also encompasses her investigator would depend on whether the investigator was defendant's agent or employee. More importantly, however, the release encompasses "all claims" plaintiff may have against the released parties, without any limitation to claims arising from the accident. The release's plain language necessarily encompasses, at the very least, plaintiff's privacy violation claim against defendant and defendant's attorney. Thus, the release encompassed more than section 998 permits, and the trial court did not err in concluding defendant's offer was invalid under section 998.

## DISPOSITION

The postjudgment order is affirmed. Plaintiff is to recover her costs on appeal.


RUBIN, J.

WE CONCUR:

BIGELOW, P. J.                                          GRIMES, J.

---

**7**     Defendant argued no less than five times before the trial court, and three times on appeal, that the release was narrowly limited to the language in section [4], in complete derogation of the broad language of section [3]. In *Chen*, this court cautioned against "selectively quoting" the terms of a settlement offer. (*Chen, supra*, 164 Cal.App.4th at p. 123.) Such a strategy is as unsuccessful today as it was in *Chen*.