Filed 7/6/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MALEKEH KHOSRAVAN, | B307482 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV20678) |
| v. | |
| CHEVRON CORPORATION et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, David S. Cunningham III, Judge.  Reversed.

Weitz & Luxenberg, Benno Ashrafi, Josiah Parker, Tyler Stock, and The Arkin Law Firm, Sharon J. Arkin for Plaintiff and Appellant.

King & Spalding, Peter A. Strotz, Anne M. Voigts and Brian Priestley for Defendants and Respondents.

————————————————

Malekeh Khosravan appeals from a postjudgment order denying her motion to strike or tax costs with respect to the expert witness fees incurred by defendants Chevron Corporation, Chevron U.S.A. Inc., and Texaco Inc. (Chevron defendants) following the trial court's granting of the Chevron defendants' motion for summary judgment. Malekeh and her husband Gholam Khosravan[1] brought claims for negligence, premises liability, loss of consortium, and related claims, alleging Khosravan contracted mesothelioma caused by exposure to asbestos while he was an Iranian citizen working for the National Iranian Oil Company (NIOC) at the Abadan refinery the Khosravans alleged was controlled by the predecessors to the Chevron defendants, Exxon Mobil Corporation, and ExxonMobil Oil Corporation (Exxon defendants). The trial court concluded the Chevron and Exxon defendants did not owe a duty of care to Khosravan, and we affirmed. (*Khosravan v. Exxon Mobil Corporation et al.* (Apr. 20, 2021, B304346) [nonpub. opn.] (*Khosravan I*).)

The trial court awarded the Chevron defendants their expert witness fees as costs based on the Khosravans' failure to accept the Chevron defendants' statutory settlement offers made to Khosravan and Malekeh under Code of Civil Procedure section 998.[2] On appeal, Malekeh contends the trial court erred in denying the Khosravans' motion to strike or tax costs because

___

[1] During the pendency of this action, Gholam Khosravan died, and Malekeh Khosravan was substituted as his successor in interest. To avoid confusion, we refer to Gholam Khosravan as Khosravan and Malekeh by her first name.

[2] Further undesignated statutory references are to the Code of Civil Procedure.

the settlement offers required the Khosravans to indemnify the Chevron defendants against possible future claims of nonparties, making the offers impossible to value; the Khosravans obtained a more favorable judgment than the offers in light of the indemnity provisions; and the offers were "token" settlement offers made in bad faith.

The Chevron defendants respond that the Khosravans' claims were meritless, and thus the requirement in the section 998 offers that the Khosravans indemnify the Chevron defendants against claims filed by their heirs or other third parties was valueless. But even if a party's claims lack merit (a questionable proposition as to the Khosravans' claims evaluated as of the time of the offers), under Civil Code section 2778, subdivision (3), the Khosravans would still be liable for the costs of the Chevron defendants' defense against the claims. Thus, the value of the section 998 offers would be difficult, if not impossible, to quantify, requiring the Khosravans (and the court) to assess the likelihood of the Khosravans' heirs or others filing suit against the Chevron defendants, and if they did, the necessity and cost of defense against the claims, meritless or otherwise. We recognize the desire by defendants to reach a settlement that protects them from all liability for the conduct alleged in the complaint, whether as to the plaintiffs or their heirs in a wrongful death action. But if defendants seek that protection through indemnification, they may well need to give up the benefit of section 998. We reverse.

# BACKGROUND AND PROCEDURAL HISTORY

A.    *The Lawsuit*

Khosravan and Malekeh filed this action on June 13, 2019 against the Chevron and Exxon defendants. The complaint alleged the Chevron and Exxon defendants owed Khosravan a duty of care based on their predecessors' control over the Abadan refinery in which Khosravan worked and a 1954 contractual agreement (the Agreement) between the Iranian government and a consortium of international oil companies (collectively, the consortium members), including defendants' predecessors. The complaint alleged the predecessors to the Chevron defendants, as consortium members, contributed "capital, management and skills in the operation and management of the oil properties of [NIOC], specifically the . . . oil refinery in Abadan, Iran." Further, the predecessor companies had "full and effective control of the [Abadan] refinery . . . in order to operate that refinery in conformity with good oil industry practice and sound engineering principles applicable to that industry." The complaint alleged Khosravan was exposed to products containing asbestos while he worked at the Abadan refinery and other Iranian facilities from approximately the 1950s to the late 1970s and that Khosravan contracted mesothelioma caused by this exposure. (*Khosravan I*, *supra*, B304346.)

B.    *The Chevron Defendants' Settlement Offers*

On October 9, 2019 the Chevron defendants served the Khosravans with offers to compromise under section 998. The Chevron defendants offered "to mutually waive costs in exchange for: [¶] [D]ismissing with prejudice all of [the Khosravans']

4

causes of action against Chevron, and [¶] [R]elease of all future claims based on the allegations in the complaint, including, but not limited to, claims for wrongful death, and indemnity in the event such claims are filed by non-parties to this case." The offers provided that if the Khosravans did not accept the offers within 30 days, they "shall be deemed withdrawn."

The Khosravans did not respond to the offers.

C.      *The Chevron Defendants' Motion for Summary Judgment*

On September 20, 2019 the Chevron defendants moved for summary judgment, which the trial court granted on December 6, 2019. We affirmed, concluding the Khosravans had not raised a triable issue of fact as to whether the Chevron defendants' predecessors exercised control over the Iranian oil facilities where Khosravan worked. We explained the Agreement did not show that the Chevron defendants' predecessors controlled the Abadan refinery because "the Agreement tasked [the Iranian Oil Refining Company] and NIOC, not the consortium members, with refinery operations." Further, the Agreement did not create a duty of care owed to Khosravan by the Chevron defendants' predecessors. We also concluded the Khosravans' evidence did not "show[] that employees of the consortium members who were seconded to the Abadan refinery as management employees were paid by the consortium members or their work was directed or controlled by the consortium members." (*Khosravan I, supra*, B304346.)

D.      *The Trial Court's Award of Costs to the Chevron Defendants*

On February 13, 2020 the Chevron defendants filed a memorandum of costs requesting approximately $33,900 in total costs, including $19,673 in expert witness fees.

5

The Khosravans moved to strike or tax costs on multiple grounds, including that the Chevron defendants' expert witness fees were not recoverable under sections 1032 and 1033.5.[3] The Khosravans asserted the Chevron defendants' statutory settlement offers were not capable of valuation because the offers required the Khosravans to indemnify the Chevron defendants against future claims by nonparties. The Khosravans also argued the Chevron defendants' section 998 offers were "zero-value, token offers, that they could never have expected [the Khosravans] to accept in good faith . . . ." The Khosravans attached the trial court's July 12, 2017 order in *Kordestani, et al. v. 3M Company, et al.* (Super. Ct. L.A. County, 2017, No. JCCP4674) denying the defendants' summary judgment motion in a personal injury asbestos case brought by an Abadan refinery worker, in which the court found the consortium members owed a duty of care to workers in facilities covered by the Agreement. The Khosravans argued the favorable decision in the *Kordestani* case showed the unreasonableness of the Chevron defendants' offers.

---

[3] Section 1032, subdivision (b), provides, "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." Under section 1032, subdivision (a)(4), a "prevailing party" is defined to include "a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant." (See *Friends of Spring Street v. Nevada City* (2019) 33 Cal.App.5th 1092, 1103.) Section 1033.5, subdivision (8), provides that "[f]ees of expert witnesses ordered by the court" may be recoverable as costs under section 1032.

In their opposition, the Chevron defendants argued their statutory settlement offers were valid and the judgment in favor of the Chevron defendants was prima facie evidence of the reasonableness of the offers. The Chevron defendants attached the December 4, 2015 order in *Malek et al. v. Blackmer Pump Company, et al.* (Super. Ct. L.A. County, 2015, No. BC580695) and the November 20, 2018 order in *Sabetian v. Air & Liquid Systems Corporation et al.* (Super. Ct. L.A. County, 2018, No. BC699945), in which the trial courts granted summary judgment for the Chevron defendants, finding the Chevron defendants did not owe a duty of care to protect refinery workers from asbestos hazards at the Abadan refinery. The Chevron defendants argued these superior court decisions demonstrated the reasonableness of their offers to settle for a mutual waiver of costs.

On July 9, 2020 the trial court granted the Khosravans' motion in part, striking approximately $14,000 in expert witness fees, but the court denied the motion as to $5,360 in expert witness fees. On July 29 the court entered judgment, awarding the Chevron defendants $15,564 in total costs against the Khosravans.

Malekeh timely appealed.[4]

---

[4] On appeal Malekeh only challenges the trial court's ruling as to the award of expert witness fees.

## DISCUSSION

A. *The Trial Court Erred in Awarding the Chevron Defendants Their Expert Witness Fees*

    1. *Applicable law and standard of review*

"""[C]osts" of a civil action consists of the expenses of litigation . . . .  The right to recover any of such costs is determined entirely by statute.'" (*Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1148; accord, *Charton v. Harkey* (2016) 247 Cal.App.4th 730, 738.)  Under section 998, subdivision (c)(1), "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff . . . shall pay the defendant's costs from the time of the offer.  In addition, . . . the court . . . , in its discretion, may require the plaintiff to pay a reasonable sum to cover postoffer costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial . . . , or during trial . . . , of the case by the defendant."

On a motion to strike or tax costs, "[t]he burden is on the offering party to demonstrate that the offer is valid under section 998." (*Ignacio v. Caracciolo* (2016) 2 Cal.App.5th 81, 86 (*Ignacio*); accord, *Timed Out LLC v. 13359 Corp.* (2018) 21 Cal.App.5th 933, 942.)  "The offer must be strictly construed in favor of the party sought to be bound by it." (*Ignacio*, at p. 86; accord, *Timed Out*, at p. 942.)  "'We independently review whether a section 998 settlement offer was valid.  In our review, we interpret any ambiguity in the offer against its proponent.'" (*Prince v. Invensure Ins. Brokers, Inc.* (2018) 23 Cal.App.5th 614, 622; accord, *Menges v. Department of Transportation* (2020)

8

59 Cal.App.5th 13, 20 (*Menges*) [the validity of an offer to compromise under section 998 "is subject to de novo review"].)

"'An offer to compromise under section 998 must be sufficiently specific to allow the recipient to evaluate the worth of the offer and make a reasoned decision whether to accept the offer.'" (*Menges, supra*, 59 Cal.App.5th at p. 26; accord, *Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 764.)  "The inclusion of nonmonetary terms and conditions does not render a 998 offer invalid; but those terms or conditions must be sufficiently certain and capable of valuation to allow the court to determine whether the judgment is more favorable than the offer."  (*Menges*, at p. 26; accord, *Ignacio, supra*, 2 Cal.App.5th at p. 87; *Valentino v. Elliott Sav-On Gas, Inc.* (1988) 201 Cal.App.3d 692, 697 (*Valentino*) ["[A]n 'offer' includes all its terms and conditions and must be evaluated in the light of all those terms and conditions."].)

"To further the purposes of promoting reasonable settlement under section 998, we must consider the validity of section 998 offers as of the date the offers are served."  (*Burch v. Children's Hospital of Orange County Thrift Stores, Inc.* (2003) 109 Cal.App.4th 537, 547-548; accord, *Valentino, supra*, 201 Cal.App.3d at p. 698 [the value of terms and conditions of a section 998 offer must be evaluated "as of the time" the offer was made "without the benefit of hindsight"].)  Where a defendant's settlement offer contains terms that make it "exceedingly difficult or impossible to determine the value of the offer to the plaintiff[,] . . . a court should not undertake extraordinary efforts to attempt to determine whether the judgment is more favorable to the plaintiff.  Instead, the court should conclude that the offer is not sufficiently specific or certain to determine its value and

9

deny cost shifting under Code of Civil Procedure section 998." (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles, supra,* 152 Cal.App.4th at p. 766; see *Valentino,* at p. 700 [courts should not "engage[] in pure guesswork"].)

""""Where . . . the offeror obtains a judgment more favorable than its offer, the judgment constitutes prima facie evidence showing the offer was reasonable and the offeror is eligible for costs as specified in section 998."""" (*Adams v. Ford Motor Co.* (2011) 199 Cal.App.4th 1475, 1484; accord, *Menges, supra,* 59 Cal.App.5th at p. 27.) Once the offeror shows the section 998 offer is valid, the burden shifts to the offeree to show the offer was not made in good faith. (*Licudine v. Cedars-Sinai Medical Center* (2019) 30 Cal.App.5th 918, 926; *Adams,* at p. 1484.)

> 2. *The Chevron defendants have not carried their burden to show they obtained a judgment more favorable than their settlement offers*

Malekeh argues the Chevron defendants' settlement offers are invalid under section 998 because they are not capable of valuation given their requirement that the Khosravans indemnify the Chevron defendants against all future claims asserted by nonparties based on the allegations in the complaint. Further, to the extent the settlement offers can be valued, Malekeh asserts the judgment obtained by the Chevron defendants is not more favorable than the offers because the indemnity provisions should be given a significant negative valuation. The Chevron defendants argue the releases in their offers are reasonably valuable because "regardless of who brought what claims related to the subject matter of this

10

litigation, those claims were equally meritless." Malekeh has the better argument.

A valid section 998 offer may include terms requiring the release of all claims (by parties or nonparties) arising from the injury at issue in the lawsuit. (*Ignacio, supra*, 2 Cal.App.5th at p. 88 ["Boilerplate language identifying individuals and entities beyond the named parties in the case as releasors and releasees does not invalidate the offer, if the claims released relate only to the subject matter of the current litigation."]; see *Auburn Woods I Homeowners Assn.* (2020) 56 Cal.App.5th 717, 725 ["An offer that requires the offeree to release all claims between the parties in the current action is effective under section 998."].) Thus, the inclusion of terms in the Chevron defendants' settlement offers requiring the Khosravans to release all claims based on the allegations of the complaint does not by itself invalidate the section 998 offers. But the offers' inclusion of a requirement that the Khosravans indemnify the Chevron defendants against claims by nonparties renders the offers difficult to value and potentially costly to the Khosravans.

*Valentino, supra*, 201 Cal.App.3d 692, relied on by Malekeh, is instructive. There, the plaintiff, who slipped and fell at a gas station, brought a personal injury action against the station's owner. (*Id.* at pp. 694-695.) The owner made a statutory settlement offer for entry of a $15,000 judgment in exchange for the plaintiff releasing the owner, its attorneys, and its insurance carrier "from any and all claims and causes of action arising out of [plaintiff's] claims including insurance bad faith and violation of Insurance Code [s]ection 790.03." (*Id.* at p. 695.) After a jury awarded the plaintiff only $9,750, the owner sought its costs under section 998, which the trial court granted.

11

(*Id*. at pp. 695-696.)  We reversed, concluding the required release rendered the offer less favorable than the jury's award and difficult to quantify.  (*Id*. at p. 698, 702.)  We explained that the value of the term requiring the plaintiff to release unfiled claims against the owner, its insurance carrier, and its attorney may have exceeded the difference between the statutory offer's monetary value and the judgment obtained.  (*Id*. at p. 698.)  We also observed that "[t]o pinpoint the value of the various potential unfiled claims [plaintiff] might have had at the time of the statutory offer or in the future against three different parties, only one of whom was even a party to the instant action, would require the court to engage in wild speculation bordering on psychic prediction."  (*Id*. at p. 699.)  Given this uncertainty, we reasoned, "Neither this court nor the trial court can be expected to properly allocate defendant's offer between the personal injury causes of action involved in the instant litigation and the several other causes of action [plaintiff] is being asked to surrender."  (*Id*. at p. 700; see *McKenzie v. Ford Motor Co.* (2015) 238 Cal.App.4th 695, 706 ["[A] section 998 offer requiring the release of claims and parties not involved in the litigation is invalid as a means of shifting litigation expenses because 'it would be hard enough for a trial court to place a value on a condition requiring the plaintiff to dismiss a single specific lawsuit she had already filed against the defendant in another court.  But when the condition mandates surrender of an array of potential lawsuits against not only the defendant but two other parties the task becomes impossible.'"].)

Here, there is a potentially high price tag on the requirement the Khosravans indemnify the Chevron defendants for claims not yet filed by third parties.  The Chevron defendants

12

would not have included the indemnification provisions if they had no value.  Further, contrary to the Chevron defendants' contention, even if nonparties were to bring only meritless claims, the Khosravans would still be liable for the costs of the Chevron defendants' defense against these claims.  (Civ. Code, § 2778, subds. 3 & 4.)  "[Civil Code] section 2778, unchanged since 1872, sets forth general rules for the interpretation of indemnity contracts, 'unless a contrary intention appears.'  If not forbidden by other, more specific, statutes, the obligations set forth in [Civil Code] section 2778 thus are deemed included in every indemnity agreement unless the parties indicate otherwise."  (*Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541, 553.)  "[T]he statute first provides that a promise of *indemnity* against claims, demands, or liability 'embraces the *costs of defense* against such claims, demands, or liability' insofar as such costs are incurred reasonably and in good faith. [Citation.]  Second, the section specifies that the indemnitor 'is bound, on request of the [indemnitee], *to defend* actions or proceedings brought against the [indemnitee] in respect to the matters embraced by the indemnity,' though the indemnitee may choose to conduct the defense.  [Citation.]  Third, the statute declares that if the indemnitor declines the indemnitee's tender of defense, 'a recovery against the [indemnitee] suffered by him in good faith, is conclusive in his favor against the [indemnitor].'" (*Ibid.*)

Accordingly, the indemnification provisions in the Chevron defendants' settlement offers, as in *Valentino, supra*, 201 Cal.App.3d at pages 699 to 700, would have required the Khosravans to evaluate a series of contingencies to determine the cost of indemnification for possible future claims of unidentified

13

parties.[5] What was the likelihood of the Khosravans' children or heirs filing wrongful death claims against the Chevron defendants had the Khosravans settled? And would the Chevron defendants have demanded the Khosravans defend against those claims? If not, what defense costs would the Khosravans have

---

[5] Section 377.60 provides as to wrongful death claims, "A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf: [¶] (a) The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession." Under California law, the decedent's release of claims for his or her injuries does not bar a future wrongful death claim by the decedent's heirs. (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 283-284 ["Nor can a decedent release a claim on behalf of his or her heirs in settlement with the defendant."]; *Earley v. Pacific Elec. Ry. Co.* (1917) 176 Cal. 79, 82 [decedent's release of claims from his injury did not constitute a bar to wife's wrongful death action for loss of consortium].) As the Supreme Court explained in *Earley* as to a wrongful death claim by the decedent's widow, "Our statute creates a new right of action with a different measure of damage from that which accrued to the injured person as a result of the defendant's wrongdoing. The right of action is to the heirs or representatives of the deceased and the elements of damage (without here attempting to specify them all) include in the case of the widow an admeasurement of the financial loss occasioned to her by the death of her husband through the deprivation of his society, comfort, and protection." (*Earley*, at pp. 81-82.) The parties do not identify how many potential claims by nonparties based on the allegations in the complaint might exist.

14

been required to reimburse?  The Chevron defendants provide no valuation for the likely expense of defending against potential claims, meritless or not.  For the same reasons, the trial court (and this court on appeal) would have "to engage in wild speculation bordering on psychic prediction" to determine the valuation of the costs of defending against potential future claims.  (*Valentino, supra*, 201 Cal.App.3d at p. 699.)

Even if it were somehow possible to value the settlement offer with inclusion of the indemnification provisions, the Khosravans' potential liability for indemnification (even if a future case could be resolved at the summary judgment stage) would far exceed the costs the Khosravans would owe absent the settlement, whether measured by the Chevron defendants' request for $33,900 in costs or the court's award of $15,500.  Thus, the Chevron defendants have failed to show the judgment is more favorable than their statutory settlement offers.

*Toste v. CalPortland Construction* (2016) 245 Cal.App.4th 362 is on point.  There, the Court of Appeal concluded a statutory settlement offer conditioned on approval of a good faith settlement motion and containing a requirement the plaintiff indemnify and hold the defendants harmless against all third parties' claims was invalid both because it was conditional and the indemnification provision defied accurate valuation.  (*Id.* at p. 373 & fn. 6.)  As to the latter issue, the court observed, "The requirement that appellant indemnify and hold respondents harmless against third party claims 'render[s] it difficult to accurately value the monetary term of the offer . . . .'"  (*Ibid*.)  The Chevron defendants attempt to distinguish the offer in *Toste* as involving the release of all third party claims, "not just those based on the same subject matter."  But there is no suggestion in

15

*Toste* that the settlement offer required indemnification of claims beyond the subject matter of the lawsuit (arising from a construction truck hitting and killing the plaintiff's father during a road paving project). (*Id.* at p. 364.) We agree with the observation of the *Toste* court that a term in a settlement offer requiring a plaintiff to indemnify a defendant against third party claims defies accurate valuation under the framework of *Valentino*. (*Id.* at p. 373, fn. 6.)

The Chevron defendants' reliance on *Ignacio, supra*, 2 Cal.App.5th 81, is misplaced. In *Ignacio*, the Court of Appeal concluded a statutory offer containing an "incredibly broad" release provision, "encompass[ing] numerous claims the releasers may have against the releasees beyond those at issue in the lawsuit," was not valid under section 998. (*Ignacio*, at p. 88.) We agree the release provision here is not as broad as that in *Ignacio*. But *Ignacio* did not involve or address the validity of a provision in a section 998 offer requiring the indemnification of future claims by unidentified nonparties.[6]

---

[6] Because we conclude the Chevron defendants' settlement offers were not valid section 998 offers, we do not reach Malekeh's contentions the offers were unreasonable bad faith offers or the offers unconstitutionally required the Khosravans to coerce their children and heirs to refrain from filing claims related to Khosravan's injury. However, we question the Chevron defendants' assertion "everyone involved knew" the Chevron defendants would prevail on summary judgment. At the time the Chevron defendants made their settlement offers, one trial court had found the consortium members owed a duty of care to protect refinery workers from asbestos hazards based on the Agreement, and two trial courts had concluded otherwise. But this court had not yet issued its decision in *Sabetian v. Exxon*

16

## DISPOSITION

The order denying the Khosravans' motion to strike or tax costs is reversed.  We remand for the trial court to recalculate the award of costs to the Chevron defendants consistent with this opinion.  Malekeh is to recover her costs on appeal.

FEUER, J.

We concur:

PERLUSS, P. J.

McCORMICK, J.*

---

*Mobil Corporation* (2020) 57 Cal.App.5th 1054, 1075, in which we concluded the Chevron defendants did not owe a duty of care to protect refinery workers from asbestos hazards at the Abadan refinery.  Although the Chevron defendants prevailed in *Sabetian* and *Khosravan I*, the plaintiffs' positions were far from frivolous, and the outcome was not as obvious as the Chevron defendants now maintain.

\* Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.