Filed 6/30/22  Shakouri v. Tesla Motors CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| ARASH SHAKOURI,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>TESLA MOTORS, INC.,<br><br>    Defendant and Respondent. | B307273<br><br>(Los Angeles County<br>Super. Ct. No. BC614940) |

        APPEAL from an order of the Superior Court of Los Angeles County, Richard J. Burdge, Judge.  Affirmed.
        Rosner, Barry & Babbitt, Hallen D. Rosner, Arlyn L. Escalante; Strategic Legal Practices, Payam Shahian; California Consumer Attorneys, Michael H. Rosenstein for Plaintiff and Appellant.
        Bowman and Brooke, Brian Takahashi, Jennifer T. Persky and Colin P. Cronin for Defendant and Respondent.

## INTRODUCTION

Code of Civil Procedure section 998 (section 998) is intended to encourage parties to accept reasonable settlement offers before trial.  (*Linthicum v. Butterfield* (2009) 175 Cal.App.4th 259, 270.)  To that end, section 998 "establishes a procedure for shifting the costs upon a party's refusal to settle. If the party who prevailed at trial obtained a judgment less favorable than a pretrial settlement offer submitted by the other party, then the prevailing party may not recover its own postoffer costs and, moreover, must pay its opponent's postoffer costs." (*Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 798, citing § 998, subd. (c)(1).)

Here, appellant Arash Shakouri sued respondent Tesla Motors, Inc. under the Song-Beverly Consumer Warranty Act (the Song-Beverly Act, Civ. Code, § 1790 et seq.) relating to alleged defects in a Tesla Model S Shakouri purchased in 2014. Tesla extended two informal settlement offers early in the case; Shakouri declined.  About six months into the case and after initial discovery, Tesla served a section 998 offer proposing $115,000 to repurchase the vehicle,[1] plus attorney fees. Again, Shakouri declined.  After nearly three years of litigation, a jury found for Shakouri and awarded him $96,145.  Following trial, Tesla moved to recover its costs under section 998.  The court granted the motion and awarded Tesla $143,624.59 in costs.

---

[1] Civil Code section 1793.2, subdivision (d)(2) "sets forth the manufacturer's affirmative obligation to 'promptly' repurchase or replace a defective vehicle [if the] manufacturer is 'unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts . . . .'" (*Kirzhner v. Mercedes-Benz USA, LLC* (2020) 9 Cal.5th 966, 971 (*Kirzhner*).)

On appeal, Shakouri argues that Tesla's section 998 offer was invalid because it was ambiguous, conditional, and made in bad faith. In particular, he asserts the section 998 offer was ambiguous because it required the vehicle's "factory equipment" to be intact upon repurchase.  We find the offer was sufficiently specific to allow Shakouri to evaluate the worth of the offer and make a reasoned decision whether to accept it.  We therefore find no error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.     Background facts**

Shakouri purchased a Tesla Model S on February 27, 2014. The car had a base price of $69,900. With added options including an upgraded 85-kilowatt battery ($10,000), silver cyclone wheels ($2,500), and a "tech package" ($3,750), the total purchase price came to $90,570.  The car came with a Tesla Uniform Mobile Connector (UMC) to charge the car.

Within weeks, Shakouri was unhappy with how the car was charging.  After several calls to customer service and remote inspections of the car, Shakouri brought the car in for service in August 2014.  Tesla found a fault with the UMC and replaced it. Shakouri reported that the charging problems continued, even at Tesla-owned charging stations, and the car had problems with its radio and Bluetooth systems.  Another repair was completed in June 2015, and more repairs were completed in October 2015, following an incident in which the car shut down, would not restart, and had to be towed.

On March 24, 2016, Shakouri filed a complaint alleging causes of action under the Song-Beverly Act.  In April 2016, counsel for Tesla told Shakouri's counsel that Tesla was willing to repurchase the vehicle, and asked for "the vehicle's service

3

history, financing information, and other documentation that will assist us in determining the repurchase amount." Shakouri's counsel responded that it was "premature at this point to engage in any settlement discussions given we have not yet received Tesla's Answer to our Complaint."

In May 2016, after answering the complaint, Tesla sent a letter to Shakouri's counsel offering "to repurchase the subject vehicle using Civil Code Section 1793.2(d)(2) to calculate the restitution amount."[2] Tesla included a spreadsheet listing $72,528.62 as a "template," and asked that Shakouri provide additional information because he "financed the vehicle [and] only he can fill us in on the numbers" relating to financing. Tesla further offered to pay an additional $4,500 for "fees, costs and expenses," but stated that if Shakouri or his counsel felt that a higher amount was appropriate, Tesla would be willing to review itemized time charges "for further consideration." The letter also stated that Tesla assumed the vehicle had "no significant unrepaired collision, vandalism or other damage" that would impact "the quid pro quo for which restitution is being paid." Shakouri did not respond to the letter.

---

[2] Civil Code section 1793.2, subdivision (d)(2)(B) states that a manufacturer "shall make restitution in an amount equal to the actual price paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, but excluding nonmanufacturer items installed by a dealer or the buyer, and including any collateral charges such as sales or use tax, license fees, registration fees, and other official fees, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer."

In July 2016, Shakouri stated in interrogatory responses that he was still driving the car. He also stated that the car had not been in any accidents, nor had it been altered or modified. In updated interrogatory responses served in September 2016, Shakouri did not update or change this information. In August 2016, an inspection of the vehicle while at a Tesla facility for maintenance showed that the car had no collision damage and included all factory equipment.

In October 2016, Tesla served a section 998 offer to Shakouri.[3] The offer included two options. The first option was a repurchase offer "in the amount to which Plaintiff is legally entitled under Civil Code § 1793.2(d)(2)(B), less a statutory mileage offset" of 6,789 miles (the number of miles Shakouri drove the car before first bringing it in for service), plus any "incidental and consequential damages." For the second option, Tesla offered "to pay the total amount of $115,000.00 to plaintiff and his lender, if any, to repurchase the Subject Vehicle and obtain clear title. This offer is intended to mirror the offer made in defense counsel's May 25, 2016 correspondence to plaintiff's counsel." The offer further stated, "The Subject Vehicle will be returned with all factory equipment on the Subject Vehicle at the time of Plaintiff's purchase." Tesla also offered to pay Shakouri's attorney fees of $5,000, or in an amount to be determined by the court. In addition, the section 998 offer stated, "There is no admission of liability by this offer. However, [Tesla] will

---

[3] The offer was signed on September 30, 2016, and was served by mail and fax on October 3, 2016. If a section 998 offer is not accepted within 30 days, it is deemed withdrawn. (§ 998, subd. (b)(2).) The time period for acceptance of a section 998 offer is extended by five days if the offer is mailed. (Code Civ. Proc., § 1013; *Hofer v. Young* (1995) 38 Cal.App.4th 52, 57.)

stipulate that Plaintiff is the prevailing party should a motion for attorney's fees be filed."

On November 7, 2016, Shakouri's counsel responded to the section 998 offer with a letter stating that the offer was invalid. The letter stated, "At the outset, it is unclear whether the offer is being provided pursuant to Defendant's obligations under Civil Code §§1793.2 & 1794. Is Defendant admitting to liability in this matter? Is Defendant agreeing to a full statutory repurchase of Shakouri's car? Is Defendant agreeing that the car is a 'lemon'? Does Defendant agree that Shakouri has 'prevailed' for purposes of the lawsuit? Such questions still remain unanswered by virtue of Defendant's unclear 998 Offer." Regarding the first offer for statutory repurchase, Shakouri stated that the offer "seeks to divest Shakouri of his inviolate right to a traditional jury trial," and the mileage offset of 6,789 miles "impermissibly penalizes Shakouri for mileage which is not 'directly attributable to use by the buyer.'" The letter also stated that the section 998 offer "fails to specify what . . . incidental and consequential damages are being offered."[4]

Turning to the second option, Shakouri's letter stated, "Defendant's offer of a lump sum $115,000 fares no better. No accounting of the sum is provided. Is Defendant paying for civil penalties but not agreeing to repurchase the vehicle pursuant to 1793.2 so that it does not have to brand title?" The letter further stated, "The Offer creates yet another impossibility in its unequivocal requirement that the 'Subject Vehicle will be returned *with all factory equipment on the Subject Vehicle at the*

---

[4] In May 2016, Tesla propounded discovery requesting information about Shakouri's incidental and consequential damages. In July 2016, Shakouri responded with only objections.

6

*time of Plaintiff's purchase*.' To attempt to comply with this provision would require Plaintiff to track down every single part that was removed by Defendant's dealer at any time since Plaintiff first took possession of the vehicle. Compliance is impossible as Plaintiff (as well as Defendant's dealers) has no way of locating exactly what part used to be installed on the Subject Vehicle." Shakouri did not accept the offer.

The case went to trial three years later, in November 2019. The jury found in favor of Shakouri and awarded him damages of $78,855.00, plus a civil penalty of $17,290.00, for a total of $96,145.00. The trial court entered judgment in favor of Shakouri in that amount.

## B. Post-trial motions

Shakouri filed a memorandum of costs and a motion for attorney fees seeking a total of $907,548.24. Tesla apparently also filed a memorandum of costs, but it is not included in the appellant's appendix. Shakouri moved to tax Tesla's costs, Tesla moved to tax Shakouri's costs, and Tesla opposed Shakouri's motion for attorney fees. The parties' positions, as relevant to this appeal, were as follows.

Shakouri asserted that he was the prevailing party in the litigation, and therefore was entitled to attorney fees and costs under the Song-Beverly Act.[5] He argued that Tesla "refuse[d] to provide relief under the [Song-Beverly Act] for the lemon it sold" to Shakouri. He asserted that Tesla's section 998 offer was "invalid, illegal, and incapable of acceptance—*i.e.*, a legal nullity,"

---

[5] Generally, the prevailing party in a civil lawsuit is entitled to recover its costs (Code Civ. Proc., § 1032), and under the Song-Beverly Act, the prevailing party is entitled to attorney fees and costs. (Civ. Code, § 1794, subd. (d).)

7

due to the condition that the vehicle be returned "with all factory equipment on the Subject Vehicle" at the time of purchase. Shakouri argued that this provision "would force Plaintiff to track down every part of the Vehicle that does not constitute 'factory equipment.'" He also asserted that the section 998 offer was made in bad faith because it included this "impossible condition."

Shakouri further contended that his recovery at trial of $96,145.00 exceeded Tesla's section 998 offer of $72,528.62. He argued that the more specific offer of $72,528.62 "controls over the more general offer of $115,000." He also noted that the $115,000 offer stated that it was intended to "mirror" the May 2016 offer, which was for $72,528.62.

Shakouri also stated that "Tesla's denial of liability forced Plaintiff to proceed with his lawsuit, which Tesla needlessly prolonged through its obstruction." Shakouri argued that the time billed by his 19 lawyers (1,316.5 hours) and their hourly rates (ranging from $275 to $675 per hour) were reasonable. Shakouri further asserted that a lodestar multiplier of 1.35 was warranted based on the "excellent outcome" and "the risk of non-recovery shouldered in taking on the case." He argued the litigation involved risk because "Tesla engaged in scorched-earth litigation and defended the case without regard to cost—frequently crossing the boundary demarcating zealous from over-zealous advocacy. Notwithstanding Tesla's frustrating tactics, Plaintiff prevailed at trial—but only after litigating this case for almost four years without any compensation."

Tesla contended that its section 998 offer exceeded Shakouri's recovery at trial. It asserted that Shakouri's "argument that Tesla's May 25, 2016 letter and October 3, 2016

8

CCP 998 offered only $72,528.62 to plaintiff is ludicrous." Tesla argued that it had offered to pay full statutory damages— including whatever incidental and consequential damages Shakouri claimed—which Tesla calculated would have amounted to at least $97,519.31. Tesla alternatively offered a lump sum of $115,000, which "liberally added approximately $20,000 above the rough estimate restitution number to include unknown loan interest,[ ] unknown incidental and consequential damages, and potential prejudgment interest." Tesla argued that Shakouri's recovery of $96,145.00 was inferior to both offers.

Tesla further asserted that the section 998 offer was valid. It stated that in the section 998 offer, "When Tesla asked for the return of the vehicle with all factory equipment, nowhere did it ask for . . . all 'original' factory equipment that came with the vehicle. The purpose of requiring the 'factory equipment at time of purchase' is to assure that plaintiff not strip it of its factory-installed equipment and return a vandalized vehicle." Tesla further stated, "Simply matching up plaintiff's car objectively with his window sticker and confirming all factory equipment was still in the car at time of surrender would have sufficed."

Tesla therefore moved to tax all of Shakouri's costs and attorney fees incurred after the section 998 offer. Tesla noted that Shakouri's costs totaled $2,356.03 and attorney fees amounted to $12,245.50 before the expiration of the section 998 offer, and the remainder of the costs and fees were incurred after the section 998 offer expired.[6]

---

[6] Tesla also argued that some of Shakouri's costs should be taxed because they were unreasonable or unnecessary. Those contentions are not relevant to the appeal.

At the hearing on the motions, Shakouri's counsel argued that the section 998 offer was "a conditional, invalid offer, with an invalid term" regarding parts that had been replaced. The court stated that if repairs had been done with manufacturer's parts, "I just think that's an ordinary and acceptable interpretation of the agreement. If, on the other hand, he tore out the sound system and installed a different sound system, or he put in a different rear-view mirror, he wouldn't have the car with the same [*sic*] as it was delivered to him. . . ." Shakouri's counsel argued that because repairs had been made and parts had been replaced, "the condition, as written, could not be complied with . . . rendering the offer incapable of acceptance." He also argued that Tesla "tendered an offer that [Shakouri] could not accept. It was vague and ambiguous. And, in fact, it's a bad faith offer." The court stated, "I don't buy the bad faith argument. I think that's not – can't believe you're making it."

Counsel for Tesla argued that the section 998 offer was not ambiguous, and "the only reasonable interpretation is that if you modify the car, you put an after-market stereo in, you've got to put it back to stock, or you can't take this 998." Tesla's counsel asserted that Shakouri's interpretation of the section 998 offer as requiring a car that had never been repaired was "absurd." The court agreed, saying to Shakouri's counsel that Tesla's "intent was they were buying back the car they sold, [and] they didn't want to get something delivered with no tires on it." The court continued, "And early on in the case, it seemed like every attempt to try to engage in any sort of settlement discussion was met with all the reasons why we can't have settlement discussions because we've got to try to keep litigating this case. And so I think you looked at the 998 and tried to figure out a way that you could

10

claim that you couldn't comply with it, rather than to evaluate it. I think it's pretty easy to evaluate it on its face."

The trial court ruled on the parties' motions in a 19-page written order. Addressing Shakouri's motion for attorney fees first, the court considered whether the section 998 offer was valid, noting that an "offer must be sufficiently specific to permit the recipient meaningfully to evaluate it and make a reasoned decision whether to accept it, or reject it and bear the risk he may have to shoulder his opponent's litigation costs and expenses." (*Berg v. Darden* (2004) 120 Cal.App.4th 721, 727.). The court rejected Shakouri's contention that the section 998 offer was invalid: "The court finds that Defendant's 998 Offer was valid because it offered $115,000, a sum certain, as an option for Plaintiff to accept. Although Plaintiff correctly contends that the 998 Offer must be construed from the perspective of the offeree and must be sufficiently specific to permit the offeree to meaningfully evaluate it and 'make a reasoned decision whether to accept it, or reject it,' here the court finds that the $115,000 cash offer was sufficiently certain for this purpose." The court also stated, "Furthermore, the Plaintiff knew if he replaced or removed parts from the vehicle. If he [had] he could not accept, but if he had not he simply had to return the vehicle he purchased."

The court further held that the section 998 offer exceeded Shakouri's recovery. The court stated, "It is undisputed that Plaintiff recovered damages in the amount of $78,855.00 plus civil penalties in the amount of $17,290.00, for a total amount of $96,145.00. Plaintiff incurred a total of $2,356.03 in costs prior to the expiration of the 998 Offer. [Record citation.] Further, Plaintiff had incurred $12,245.50 in fees at the time of the offer.

11

[Record citation.] Accordingly, Plaintiff's total recovery for purposes of determining whether the 998 cost shifting provisions apply was $110,746.53. [¶] Because Defendant's 998 Offer was for $115,000, the court finds that Plaintiff did not obtain a more favorable judgment for purposes of Code of Civil Procedure section 998."

The court therefore granted Shakouri's motion for attorney fees in part, awarding fees "incurred prior to the expiration of the 998 Offer, in the total amount of $12,245.50." The court denied Shakouri's request for a lodestar multiplier.

Turning to Shakouri's motion to tax Tesla's costs, the court rejected Shakouri's argument that the costs should be taxed in their entirety based on the section 998 offer, reiterating that the offer exceeded the judgment. The court taxed some discrete charges, and awarded Tesla $143,624.59 in costs.

The court granted Tesla's motion to tax Shakouri's costs. The court stated, "As discussed above, the court finds that Defendant's 998 Offer was valid and that Plaintiff failed to obtain a more favorable judgment for purposes of Code of Civil Procedure section 998. As such, the court agrees that Plaintiff should only be entitled to costs in the total amount of $2,356.03," the costs incurred before the section 998 offer.

Shakouri timely appealed.

## DISCUSSION

Shakouri contends the court erred in finding the section 998 offer valid. He challenges two phrases in the section 998 offer: (1) "[t]he Subject Vehicle will be returned with all factory equipment on the Subject Vehicle at the time of Plaintiff's purchase," and (2) that the offer was "intended to mirror the offer made" in the May 2016 letter. He characterizes the issue as a

12

determination of the validity of the section 998 offer, and urges us to review the matter de novo.  Generally, on appeal "we independently review whether a section 998 settlement offer was valid." (*Ignacio v. Caracciolo* (2016) 2 Cal.App.5th 81, 86; see also *Khosravan v. Chevron Corp.* (2021) 66 Cal.App.5th 288, 294-295 (*Khosravan*).)

However, Shakouri's arguments focus almost exclusively on what Shakouri asserts was Tesla's bad faith and "gamesmanship."  He asserts that the provision that the vehicle be returned with "all factory equipment" was "an impossible condition Tesla knew Shakouri could not meet."  He argues Tesla "knew the vehicle had undergone many repairs [and] that many of its factory parts (present at the time of purchase) had been replaced."  He asserts that Tesla's "gamesmanship proves the offer was invalid and incapable of acceptance, and further that it was likely issued in bad faith."  He urges this court to "find that Tesla acted in bad faith."

"Whether a section 998 offer was reasonable and made in good faith is a matter left to the sound discretion of the trial court, and will not be reversed on appeal except for a clear abuse of discretion." (*Barba v. Perez* (2008) 166 Cal.App.4th 444, 450.)  Such a ruling will not be overturned "absent a showing that discretion was exercised in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*Najera v. Huerta* (2011) 191 Cal.App.4th 872, 877.)  We address Shakouri's contentions of bad faith first.

## A.    The section 998 offer was not made in bad faith

When Shakouri's counsel suggested to the trial court at the hearing that Tesla made the section 998 offer in bad faith, the court was skeptical:  "I don't buy the bad faith argument.  I think

13

that's not – can't believe you're making it."  The court's written order did not mention bad faith, but it can be inferred that the court rejected this argument.

"A 998 offer is made in good faith only if the offer is '"realistically reasonable under the circumstances of the particular case"' [citation]—that is, if the offer '"carr[ies] with it some reasonable prospect of acceptance."'" (*Licudine v. Cedars-Sinai Medical Center* (2019) 30 Cal.App.5th 918, 924.)  "Whether a section 998 offer has a reasonable prospect of acceptance is a function of two considerations, both to be evaluated in light of the circumstances '"at the time of the offer"' and '"not by virtue of hindsight."'  [Citations.]  First, was the 998 offer within the 'range of reasonably possible results' at trial, considering all of the information the offeror knew or reasonably should have known?  [Citation.]  Second, did the offeror know that the offeree had sufficient information, based on what the offeree knew or reasonably should have known, to assess whether the 'offer [was] a reasonable one,' such that the offeree had a 'fair opportunity to intelligently evaluate the offer' ?"  (*Id.* at pp. 924-925.)

Both elements have been met here.  First, Tesla's offer was within the range of reasonably possible results at trial.  Shakouri purchased the vehicle for $90,570, Tesla offered $115,000 to repurchase the vehicle, and the jury's verdict was for $96,145.  Although we do not evaluate a section 998 offer by virtue of hindsight alone, when "the offeror obtains a judgment more favorable than its offer, the judgment constitutes prima facie evidence showing the offer was reasonable and the offeror is eligible for costs as specified in section 998.'" (*Adams v. Ford Motor Co.* (2011) 199 Cal.App.4th 1475, 1484.)  Here, the offer was well within the reasonable range.

Second, Tesla knew Shakouri had sufficient information to assess the offer. Before Tesla served the section 998 offer, Shakouri stated in discovery responses that he was still driving the car, it had not been in any accidents, and it had not been altered or modified. Thus, when Tesla made the section 998 offer in October 2016, it had reason to know that Shakouri had sufficient information to assess whether it was reasonable to offer to repurchase the car with "all factory equipment" intact.

We therefore find no abuse of discretion in the trial court's implicit ruling that the section 998 offer was made in good faith. Accordingly, we reject Shakouri's appellate arguments to the extent that they rely on accusations of gamesmanship or bad faith based on Shakouri's interpretation of Tesla's intent, rather than the validity of the offer itself. We turn to Shakouri's additional contentions that the offer was not valid.

## B. The section 998 offer was valid

A section 998 offer "must be sufficiently specific to allow the recipient to evaluate the worth of the offer and make a reasoned decision whether to accept the offer." (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 764.) Thus, if a section 998 offer includes "terms or conditions, apart from the termination of the pending action in exchange for monetary consideration, that make it exceedingly difficult or impossible to determine the value of the offer to the plaintiff," the court "should not undertake extraordinary efforts to attempt to determine whether the judgment is more favorable to the plaintiff. Instead, the court should conclude that the offer is not sufficiently specific or certain to determine its value and deny cost shifting under Code of Civil Procedure section 998." (*Id*. at p. 766.)

15

As with a bad faith determination, "we do not evaluate the validity of a statutory offer to compromise after trial concludes. Rather, we must evaluate the offer at the time the offeree receives it and determine whether he or she is able to clearly evaluate the worth of the offer." (*Duff v. Jaguar Land Rover North America, LLC* (2022) 74 Cal.App.5th 491, 500 (*Duff*); see also *Valentino v. Elliott Sav-On Gas, Inc.* (1988) 201 Cal.App.3d 692, 698 ["the value" of a section 998 offer "must be measured as of the time [the party] made its statutory offer and without the benefit of hindsight"].) "We apply general contract principles in interpreting a section 998 offer when doing so does not conflict with the statute's purpose of encouraging the pretrial settlement of lawsuits." (*Auburn Woods I Homeowners Association v. State Farm General Insurance Company* (2020) 56 Cal.App.5th 717, 725.) In addition, we "interpret any ambiguity in the offer against its proponent." (*Ignacio v. Caracciolo, supra,* 2 Cal.App.5th at p. 86.)

Shakouri argues that the requirement that the vehicle be "returned with all factory equipment on the Subject Vehicle at the time of Plaintiff's purchase" rendered the section 998 offer invalid. He asserts this was an "impossible condition" "given that Tesla knew the vehicle had undergone many repairs, that many of its factory parts (present at the time of purchase) had been replaced and thus it was impossible" to comply with the offer. Shakouri further asserts that Tesla's reference in the section 998 offer to the May 2016 letter was improper because the May 2016 letter "provided for an *offset for any accident damage.* This offset is not authorized by Song-Beverly." Tesla argues that the common-sense interpretation of the section 998 offer is that

16

Shakouri could not return the car "in a stripped state" or "with valuable parts missing."

Determining the validity of a section 998 offer focuses on whether the *offeree* can evaluate the offer at the time the offer was made. (See, e.g., *MacQuiddy v. Mercedes-Benz USA, LLC* (2015) 233 Cal.App.4th 1036, 1050 (*MacQuiddy*) ["'the offeree must be able to clearly evaluate the worth of the extended offer'"]; *Duff, supra,* 74 Cal.App.5th at p. 499 ["The offer must be sufficiently specific to allow the recipient to meaningfully evaluate it and make a reasoned decision whether to accept it"].) Shakouri, as the owner and primary driver of the vehicle, knew whether the car had been modified to remove any valuable factory equipment. Shakouri stated in his interrogatory responses served in July 2016 that the car had not been in any accidents and it had not been modified, and an inspection by Tesla showed that as of August 2016 the car had not been modified. Shakouri had sufficient information when Tesla served the section 998 offer in October 2016 to meaningfully evaluate it.

Shakouri contends the "factory equipment" provision did not allow him to return the car with *any* parts on the vehicle that had been replaced after the date of purchase. We agree with Tesla that this interpretation is unreasonable, particularly in the context of the Song-Beverly Act. Tesla offered to repurchase the vehicle pursuant to Civil Code section 1793.2, subdivision (d), which states, "If the manufacturer . . . is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties *after a reasonable number of attempts*, the manufacturer shall either promptly replace the new motor vehicle in accordance with subparagraph (A) or promptly make restitution to the buyer in accordance with subparagraph (B)."

17

(Emphasis added.)  Thus, "[t]he statute requires the manufacturer to afford the specified remedies of restitution or replacement if that manufacturer is unable to repair the vehicle 'after a reasonable number of attempts.'  'Attempts' is plural," and a "single attempt does not meet the statutory threshold." (*Silvio v. Ford Motor Co.* (2003) 109 Cal.App.4th 1205, 1208, 1209.)

Any repurchase of a vehicle under section 1793.2, subdivision (d), therefore, necessarily involves the repurchase of a vehicle that has been subjected to multiple repair efforts.  Presumably, such repairs include the replacement of some parts that were on the car when it was originally sold, as well as any parts replaced in the course of routine maintenance.  Here, for example, Tesla replaced an outside mirror on Shakouri's car in August 2014, and replaced the windshield wiper blades in December 2014.  It is unreasonable to interpret Tesla's October 2016 offer to mean that Shakouri could only accept the section 998 offer if he somehow tracked down the mirror and the wiper blades that had been removed years earlier. "[L]anguage in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract.  [Citation.]  Courts will not strain to create an ambiguity where none exists." (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18-19.)

This case is distinguishable from two cases Shakouri cites, *MacQuiddy, supra,* 233 Cal.App.4th 1036 and *Valdez v. Seidner-Miller, Inc.* (2019) 33 Cal.App.5th 600 (*Valdez*).  In *MacQuiddy*, the court held that a section 998 offer was invalid.  There, the plaintiff purchased a vehicle  that developed mechanical problems.  The plaintiff took the car to the dealer multiple times

18

for repairs, and eventually sued under the Song-Beverly Act and other laws.  "In the answer, the company admitted that it or its authorized repair facility was unable to conform MacQuiddy's car to the applicable express and implied warranties."  (*Id.* at p. 1040.)  The manufacturer then extended a section 998 offer to repurchase the car on the condition that the car was "in an undamaged condition, save normal wear and tear." (*Id.* at p. 1041.)  The plaintiff rejected the offer and the case went to trial.

The Court of Appeal held that the "undamaged condition" provision rendered the section 998 offer invalid. (*MacQuiddy, supra,* 233 Cal.App.4th at p. 1049.)  The court stated, "Whether the car was in an 'undamaged condition' was not defined, nor was it clear what would happen if MacQuiddy accepted the offer, but Mercedes-Benz subsequently concluded the car was 'damaged' beyond normal wear and tear." (*Id.* at p. 1050.)  The court concluded, "Because of the undefined and subjective nature of the term that Mercedes-Benz would repurchase the 'undamaged' car, we conclude the section 998 offer was at least ambiguous, and was therefore not valid."  (*Ibid.*)

Shakouri asserts that *Valdez, supra,* 33 Cal.App.5th 600 involved a "conditional and ambiguous provision [in a settlement offer] similar to the one here."  In *Valdez*, a car dealership allegedly provided false information to the plaintiff, Valdez, when he leased a car.  Valdez sued under multiple laws including the Consumer Legal Remedies Act (CLRA, Civ. Code, § 1750 et seq.), which states that an action cannot be maintained if "an appropriate correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable time, to the consumer." (Civ. Code, § 1782, subd. (b).)  Before the action was filed, the defendant, Seidner, extended a CLRA "correction offer"

19

to Valdez, which "required Valdez to return the vehicle 'without damage or vandalism, save normal wear and tear,' and allowed Seidner to void the settlement agreement if it determined the vehicle was 'in unacceptable condition.'" (*Valdez, supra*, 33 Cal.App.5th at p. 604.) In settlement negotiations, Seidner stated that the settlement was contingent on an inspection of the car, but Valdez refused to allow the agreement to be based on Seidner's "subjective review of the car's condition." (*Ibid*.) Valdez declined the offer and filed the lawsuit. The trial court granted the defendant's motion for summary judgment, holding that the correction offer barred the action.

The Court of Appeal reversed, holding that the settlement offer was not an appropriate correction offer under the CLRA. (*Valdez, supra*, 33 Cal.App.5th at p. 611.) The court primarily focused on the fact that the offer improperly required Valdez to forfeit all of his non-CLRA claims. (*Ibid*.) The court also stated, however, that "Seidner's correction offer improperly allowed Seidner unilaterally to void the proposed settlement agreement if it determined after an inspection that the vehicle was in an unacceptable condition. [ ] Valdez does not dispute that if he returned the vehicle with damage beyond normal wear and tear, Seidner would be entitled to an offset for the damage. But conditioning CLRA remedies on Seidner's subjective determination whether the vehicle was in an acceptable condition rendered Seidner's offer illusory. Thus, for this reason as well, Seidner's offer was not an appropriate correction offer under section 1782, subdivision (b)." (*Id*. at pp. 615-616.)

Tesla's section 998 offer requiring factory equipment to remain in the vehicle is not comparable to the provisions in *MacQuiddy* and *Valdez* allowing the defendants to be the sole

20

arbiters of what constituted "normal wear and tear" of a vehicle. The validity of a section 998 offer focuses on whether an offeree can evaluate an offer, but the provisions in *MacQuiddy* and *Valdez* prevented the plaintiffs from doing so by leaving the final determination of "damage" versus "wear and tear" up to the defendants. Here, by contrast, Shakouri knew whether factory equipment had been removed from the vehicle; he stated in discovery responses that he continued to drive the car, and it had not been damaged or modified. Thus, Shakouri had sufficient information to evaluate this provision of the section 998 offer.

This is also not a situation akin to that in *Duff, supra*, in which the section 998 offer from the manufacturer, Jaguar, "provided that Jaguar would repurchase the vehicle for $28,430.80 or greater than that amount if Duff 'provide[d] documentation to show the amount is more than $28,430.80.'" (*Duff, supra*, 74 Cal.App.5th at p. 496.) The Court of Appeal held that the offer was not sufficiently specific because it "presents somewhat of a moving target," and it did not allow for a clear determination of what would constitute a greater recovery at trial. (*Id*. at p. 500.) Here, by contrast, Tesla's $115,000 offer was sufficiently specific.

Shakouri argues that the offer's ambiguity is also demonstrated by the fact that throughout the litigation, including at trial and in post-trial motions, Tesla provided "a host of alternative definitions for this express term in its offer." He asks us to look at "parol evidence" consisting of documents from unrelated superior court cases against different car manufacturers addressing similar section 998 offer language. Such evidence is irrelevant to whether Shakouri could meaningfully evaluate Tesla's section 998 offer. "To further the

21

purposes of promoting reasonable settlement under section 998, we must consider the validity of section 998 offers as of the date the offers are served." (*Burch v. Children's Hospital of Orange County Thrift Stores, Inc.* (2003) 109 Cal.App.4th 537, 547-548; accord, *Khosravan, supra,* 66 Cal.App.5th at p. 295.) Tesla's defenses at trial in 2019 and documents from different cases that post-date Tesla's offer are irrelevant to whether the section 998 offer here was sufficiently specific.

Shakouri also argues that "the offer did not say what would happen should Tesla determine that any of the factory equipment was missing or was damaged beyond repair by a 'vindictive consumer' and how that issue may be resolved." However, failure to account for attempted future breaches by a vindictive offeree does not render an offer invalid. Moreover, a section 998 offer need not address every detail or contingency in order to be valid. (See, e.g., *Kirzhner, supra,* 9 Cal.5th 966, 985 ["By offering to pay incidental damages, the section 998 offer presumes liability with the precise amount of damages to be later agreed upon by the parties or ruled upon by a court"]; *Covert v. FCA USA, LLC* (2022) 73 Cal.App.5th 821, 838-842 [section 998 offer's failure to include provisions addressing attorney fees, interest, and other details did not render offer invalid]; but see *Saba v. Crater* (1998) 62 Cal.App.4th 150, 153 ["Section 998 does not grant the court the authority to adjudicate" disputes about the parties' intent in settling a case when the purported section 998 offer was oral rather than written]; *Bias v. Wright* (2002) 103 Cal.App.4th 811, 819-822 [court could not adjudicate disagreements relating to the oral acceptance of a section 998 offer].)

Shakouri further asserts that Tesla's reference to the May 2016 letter in the section 998 offer rendered the offer ambiguous.

He argues that because the May 2016 letter included a spreadsheet which mentioned an offset for any accident damage, which is "not authorized by Song-Beverly," the offer "became even more ambiguous and conditional on Tesla's subjective acceptance of the vehicle's condition." However, by the time Tesla extended the section 998 offer in October 2016, Shakouri had stated in his interrogatory responses that the car had not been in any accidents, and a vehicle inspection showed that there was no accident damage. The lack of information available to Tesla in May 2016 does not render the October 2016 offer invalid.

In short, Tesla's section 998 offer was sufficiently specific to allow Shakouri to evaluate the worth of the offer and make a reasoned decision whether to accept it. We therefore find no error in the trial court's holding that the section 998 offer was valid.

## DISPOSITION

The trial court's order is affirmed. Respondent is entitled to its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

MANELLA, P. J.

WILLHITE, J.

23