Filed 12/17/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MARITZA ZAVALA, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> HYUNDAI MOTOR AMERICA, <br><br> Defendant and Appellant. | D082747, D082940 <br><br><br> (Super. Ct. No. PSC1807879) |

CONSOLIDATED APPEALS from orders and a judgment of the Superior Court of Riverside County, Harold W. Hopp, Judge. Reversed and remanded.

Nelson Mullins Riley & Scarborough, Robert L. Wise and Jennifer T. Persky; Bowman and Brooke, Brian Takahashi, Richard L. Stuhlbarg and Carissa Casolari for Defendant and Appellant.

Knight Law Group and Roger Kirnos; Greines, Martin, Stein & Richland, Cynthia E. Tobisman and Joseph V. Bui for Plaintiff and Respondent.

Maritza Zavala brought this lawsuit against Hyundai Motor America (HMA) under the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.) (the Song-Beverly Act), alleging that HMA failed to honor its warranty

obligations for the vehicle Zavala purchased in 2016. After Zavala prevailed at trial, the trial court granted Zavala's motion for attorney fees, and it ruled on the parties' competing motions to tax costs. As a result, judgment was entered in favor of Zavala in the amount of $276,104.61 for her attorney fees and costs. In this appeal, HMA contends that the trial court erred in awarding fees and costs to Zavala because the offer to compromise that HMA made pursuant to Code of Civil Procedure[1] section 998 at the beginning of the litigation was sufficiently specific and certain to trigger section 998's cost shifting provisions (§ 998, subd. (c)(1)).

We conclude that HMA's offer to compromise *was* valid to trigger cost shifting under section 998 because it contained two independent options for Zavala to consider, one of which was sufficiently specific and certain and in an amount greater than the jury's eventual verdict. The trial court erred because it did not *separately* consider the validity of the two separate offers and therefore improperly concluded that the offer to compromise, as a whole, was invalid due to the lack of specificity of one of the options. We accordingly reverse the trial court's orders ruling on Zavala's motion for attorney fees and the parties' competing motions to tax costs, as well as the judgment on those orders, and we remand for further proceedings consistent with this opinion.

I.

FACTUAL AND PROCEDURAL BACKGROUND

On December 20, 2018, Zavala filed suit against HMA. Zavala alleged that in March 2016 she purchased a new Hyundai Elantra, but "[t]he vehicle was delivered . . . with serious defects and nonconformities to warranty and developed other serious defects and nonconformities to warranty including,

---

[1]     Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

2

but not limited to, brakes, engine, interior, electrical, suspension, HVAC, and structural defects." According to the complaint, HMA was unable to fix the problems after a reasonable number of attempts and failed to either promptly replace the vehicle or make restitution. The complaint alleged causes of action under the Song-Beverly Act for breach of express warranty, breach of implied warranty, and violation of Civil Code section 1793.2, subdivision (b).[2]

A jury trial was held in August 2022. The jury awarded Zavala the amount of $23,122.44. The verdict included (1) $20,090 for the vehicle's purchase price; (2) $5,889.44 for finance charges; and (3) $1,964.60 for sales tax, license fees, registration fees, and other official fees. From those amounts, $4,821.60 was subtracted based on the jury's finding the vehicle had been driven 28,789 miles before it was delivered to HMA for repair of the substantially impairing defect. Although the jury was given the option to award a penalty of up to two times the actual damages if it found that HMA willfully failed to replace or repurchase Zavala's vehicle (Civ. Code, § 1794, subds. (c), (e)), the jury did not make such a finding and did not award a penalty. The jury also did not award any incidental or consequential damages. Judgment was entered in favor of Zavala for "the sum of $23,122.44 in damages from Defendant [HMA] with attorneys fees and costs as permitted by law."[3]

---

[2] That provision states that "[u]nless the buyer agrees in writing to the contrary, the goods shall be serviced or repaired so as to conform to the applicable warranties within 30 days." (Civ. Code, § 1793.2, subd. (b).)

[3] HMA subsequently satisfied the judgment by making payment to Zavala, and Zavala surrendered the vehicle to HMA.

The parties each filed a memorandum of costs, followed by motions to tax (or strike) each other's costs. Zavala also brought a motion for attorney fees. That motion was based on a provision in the Song-Beverly Act that allows a prevailing buyer to recover "costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." (Civ. Code, § 1794, subd. (d).)

In opposing Zavala's attorney fee motion and motion to tax costs, and in supporting its own motion to tax Zavala's costs, HMA relied upon its February 6, 2019 statutory offer to compromise pursuant to section 998 (the 998 Offer). Under section 998, "[i]f an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover . . . postoffer costs and shall pay the defendant's costs from the time of the offer." (§ 998, subd. (c)(1).) "Costs" for the purpose of section 998 include attorney fees authorized by contract, statute or law. (§§ 998, subd. (a), 1032, subd. (b), 1033.5, subd. (a)(1).)

The 998 Offer presented Zavala with two different options. Under both of the options, Zavala would transfer possession of her vehicle back to HMA with clear title and would dismiss the action with prejudice. HMA would pay Zavala's reasonable attorney fees and costs,[4] and would waive its own costs. Aside from those similarities, the two options were significantly different.

The first option was simple and straightforward. HMA would make a payment of $65,000, a portion of which would be sent to the lender to pay off

---

[4] Specifically, with respect to attorney fees and costs, the 998 Offer stated, "HMA will pay [Zavala's] attorney's fees, expenses and costs in an amount to be agreed upon, or at [Zavala's] election, in the amount to be determined by the Court to have been reasonably incurred pursuant to Civil Code Section 1794(d)."

any loan on the vehicle, with the remainder going to Zavala (the $65,000 Option).

The second option was more complicated.  Instead of setting forth any specific monetary amounts, the second option tracked the relevant statutory provisions and, for any monetary amounts that could not be agreed upon, it provided a dispute resolution process (the Statutory Option):

"1.  Pursuant to Civil Code Section 1793.2(d)(1) and subject to proof, HMA will pay [Zavala] the past amounts which [Zavala] has paid for the 2017 Elantra . . . (hereinafter 'Subject Vehicle'), including any charges for transportation, manufacturer-installed options, finance charges attributed to the purchase of the Subject Vehicle, and collateral charges such as sales tax, license fees, registration fees, and other official fees, but excluding non-manufacturer items installed by a dealer or [Zavala].  In addition, if [Zavala] has an outstanding loan for the Subject Vehicle, HMA will pay the lender directly the remaining amount necessary to pay off the loan on the Subject Vehicle.  The total amounts paid will be the amount to which [Zavala] is legally entitled under Civil Code Section 1793.2(d)(2)(B), less a statutory mileage offset calculated using 22,878 miles as the numerator for the calculation of the statutory mileage offset under Civil Code Section 1793.2(d)(2)(C).  [Zavala] is invited to submit an itemization of the amounts paid or payable for the Subject Vehicle at the time this offer is accepted together with proof of same.

"2.  Subject to proof, HMA will pay to [Zavala] any incidental and consequential damages to which [Zavala] is legally entitled under Civil Code Sections 1793.2(d)(2)(B) and 1794(b).  [Zavala] is invited to submit an itemization of all incidental and consequential damages to HMA at the time this offer is accepted together with proof of same.

"3.  In addition, HMA will pay to [Zavala] an amount equal to one time the amount of actual damages.

"4.  If there is a dispute as to legal entitlement and/or the amounts recoverable in paragraphs 1, 2 and 3 above after submission of the itemization and proof of same, HMA will pay the undisputed amounts to [Zavala].  For the disputed amounts,

5

if an agreement is not reached, HMA will allow the Court to determine, either by motion, bench trial, jury trial, expedited jury trial under Rule 3.1545 of the Rules of Court, or by referee under Code of Civil Procedure Section 638, with [Zavala] choosing the dispute resolution process, and [Zavala] bearing the burden of proof by a preponderance of the evidence for legal entitlement and the amount of damages sought."

The 998 Offer provided Zavala with a clear choice between the $65,000 Option and the Statutory Option, which she could exercise by checking a box corresponding to the option she selected and then, through counsel, signing the offer letter. Zavala did not accept the offer.

In ruling on the fee and costs motions on February 3, 2023, the trial court rejected HMA's contention that the 998 Offer served to shift the parties' entitlement to costs after the date of that offer. The trial court concluded that the 998 Offer was invalid for the purpose of shifting costs because it "was not sufficiently specific for [Zavala] to clearly evaluate the worth of the extended offer." As the trial court explained, "To be sure, the $65,000 [Option] was specific, but the [Statutory Option] alternative was vague— 'subject to proof' of an amount that might be greater or less than the $65,000. The amount of incidental, consequential and actual damages are not certain. [Zavala] would have to submit documentation and have any disputed items later determined by a trier of fact. Forcing [Zavala] to choose between this uncertain amount and $65,000 makes the offer invalid."

The trial court therefore granted (1) Zavala's motion for attorney fees; (2) Zavala's motion to tax HMA's costs; and (3) HMA's motion to tax Zavala's costs in part, deducting the costs that it determined to be unreasonable or

unnecessary. As a result, Zavala was awarded attorney fees in the amount of $220,806.37 and costs in the amount of $55,298.24.[5]

HMA appeals from the attorney fee award and the rulings on the motions to tax costs, as well as from the judgment in favor of Zavala in the amount of $276,104.61 that the trial court subsequently entered based on those orders.[6]

## II.

## DISCUSSION

The sole issue on appeal is whether the trial court erred in concluding that the 998 Offer was invalid because it was not sufficiently specific and certain to trigger the cost shifting provisions of section 998.

A.  *Applicable Legal Standards*

"Section 998 is intended to encourage settlement by punishing the party who fails to accept a reasonable offer. (*Elite Show Services, Inc. v. Staffpro, Inc.* (2004) 119 Cal.App.4th 263, 268 [(*Elite Show*)].) Under the law, a plaintiff who fails to accept an offer and then fails to obtain a more favorable result at trial cannot recover . . . postoffer costs and must pay the

---

[5]  These figures reflect the trial court's order of May 1, 2023, correcting a mathematical error in the court's original calculation of the award of costs. The trial court entered a judgment on May 19, 2023, in favor of Zavala in the amount of $276,104.61, which reflected the corrected costs award.

[6]  Out of an abundance of caution, HMA timely filed two separate notices of appeal, generating two difference appellate case numbers, which we have consolidated. The first notice of appeal, in case No. D082747, was filed on March 7, 2023, following the trial court's February 3, 2023 ruling on the fee and costs motions. The second notice of appeal, in case No. D082940, was filed on October 9, 2023, after the trial court's May 19, 2023 issuance of the judgment in favor of Zavala in the amount of $276,104.61 for her fees and costs.

defendant's costs from the time of the offer . . . . (§ 998, subd. (c)(1).) Costs include attorney fees where authorized by statute, as here." (*Etcheson v. FCA US LLC* (2018) 30 Cal.App.5th 831, 851–852 (*Etcheson*).) However, as centrally relevant here, "[w]here a section 998 offer is *invalid* it will *not* operate to cut off a plaintiff's costs." (*Id*. at p. 852, italics added.)[7]

To be valid, "statutory compromise offers must be clear and specific," both from the perspective of the offeree and the perspective of the trial court. (*Berg v. Darden* (2004) 120 Cal.App.4th 721, 727 (*Berg*).) "[F]rom the perspective of the offeree, the offer must be sufficiently specific to permit the recipient meaningfully to evaluate it and make a reasoned decision whether to accept it, or reject it and bear the risk [that the offeree] may have to shoulder [the] opponent's litigation costs and expenses. [Citation.] Thus, the offeree must be able to clearly evaluate the worth of the extended offer." (*Ibid*.) Further, keeping in mind the eventual need for the trial court to decide whether cost shifting has been triggered, the offer "must be sufficiently certain and capable of valuation to allow the court to determine whether the judgment is more favorable than the offer." (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 764 (*Fassberg*); see also *Valentino v. Elliott Sav-On Gas, Inc.* (1988) 201 Cal.App.3d 692, 700–701 (*Valentino*) ["Recalling the underlying purpose of section 998 is to promote judicial economy, this court is not about to encourage defendants to add conditions to their statutory offers which introduce so much uncertainty to those offers the courts must spend

---

7       Further, a valid offer is not effective to shift costs unless it is reasonable and made in good faith. (*Rojas v. HSBC Card Services Inc.* (2023) 93 Cal.App.5th 860, 892–893.) Those requirements are not at issue here, as Zavala's appeal does not challenge the reasonableness of the 998 Offer or HMA's good faith in making it.

hours or days sorting them out to determine whether plaintiffs have achieved a more favorable result at trial."].) "Where a defendant's settlement offer contains terms that make it 'exceedingly difficult or impossible to determine the value of the offer to the plaintiff[,] . . . a court should not undertake extraordinary efforts to attempt to determine whether the judgment is more favorable to the plaintiff. Instead, the court should conclude that the offer is not sufficiently specific or certain to determine its value and deny cost shifting under . . . section 998.' " (*Khosravan v. Chevron Corp.* (2021) 66 Cal.App.5th 288, 295.)

In determining whether an offer to compromise is sufficiently specific or certain as to its value, "[t]he validity of a section 998 offer is determined as of the date it is served." (*Smalley v. Subaru of America, Inc.* (2022) 87 Cal.App.5th 450, 455 (*Smalley*).) A valuation of a settlement offer "must be measured as of the time [the offeror] made its statutory offer and without the benefit of hindsight." (*Valentino*, *supra*, 201 Cal.App.3d at p. 698; see also *Kinney v. City of Corona* (2023) 99 Cal.App.5th 1, 18 ["Courts must consider the validity of a section 998 offer as of the date the offer is made, without the benefit of hindsight or in light of subsequent events."].)

"We independently review whether a section 998 settlement offer was valid. In our review, we interpret any ambiguity in the offer against its proponent. [Citation.] The burden is on the offering party to demonstrate that the offer is valid under section 998. [Citation.] The offer must be strictly construed in favor of the party sought to be bound by it.' " (*Ignacio v. Caracciolo* (2016) 2 Cal.App.5th 81, 86 (*Ignacio*).)

B.    *The Validity of the 998 Offer*

HMA argues that there are two different approaches we could take to conclude that the 998 Offer was sufficiently specific and certain. First, we

could conclude that both the $65,000 Option and the Statutory Option were sufficiently specific and certain, and that, as a result, the 998 Offer was valid. Second, even if we were to conclude that the Statutory Option was not sufficiently specific and certain, we could still *separately* consider the $65,000 Option to conclude that it was valid to trigger the cost shifting provisions of section 998. We consider each argument in turn.

1. *The $65,000 Option Was Sufficiently Specific and Certain, but the Statutory Option Was Not*

We first consider whether, when viewed separately, both the $65,000 Option and the Statutory Option were sufficiently specific.

As to the $65,000 Option, Zavala does not dispute that it was a specific offer for a certain value of $65,000, and that if HMA were to have offered the $65,000 Option on its own, it would have been a valid offer. As the trial court stated, "To be sure, the $65,000 was specific." We concur with that assessment. The value of the $65,000 Option was easy for Zavala to understand, and the trial court could easily compare the value of the $65,000 Option to the amount eventually recovered by Zavala at trial.

The dispute between the parties is as to the Statutory Option. As we have explained, the Statutory Option did not set forth any specific monetary amounts. Instead, it referred to the statutory provisions in the Song-Beverly Act for calculating the restitution that a plaintiff may recover, and it committed to make payment to Zavala pursuant to those provisions (Civ. Code, § 1793.2, subd. (d)), with the clarification that the statutory mileage offset would be calculated using 22,878 miles as the numerator (*id.*, subd. (d)(2)(C)). The Statutory Option also committed to paying "any incidental and consequential damages to which [Zavala] is legally entitled" under the statute, "[s]ubject to proof." Finally, it offered to double the amount of Zavala's "actual damages," which appears to be an attempt to

10

settle on the amount of the civil penalty that could be awarded to Zavala at trial pursuant to Civil Code section 1794, subdivisions (c) and (e) if HMA were found to have willfully refused to honor its obligations to repurchase or replace Zavala's vehicle.[8] Instead of setting forth any specific monetary recovery for Zavala, the offer invited Zavala to "submit an itemization" to prove the amounts she would be entitled to recover under the terms of the settlement. If HMA disputed any of the amounts to which Zavala contended she was entitled under the settlement, Zavala would have the burden of proof to show entitlement to those amounts in a court proceeding or to a referee.

HMA contends that the Statutory Option was sufficiently specific and certain because "this option laid out specific, enumerated damages—items taken directly from the [Song-Beverly Act], all with distinct, ascertainable values based on actual amounts paid or owned by [Zavala]." Put simply, HMA asserts that because Zavala knew the amounts she had paid in connection with the vehicle and had access to the statutory provisions, she could figure out how much she would recover if she accepted the Statutory Option and could presumably predict how any dispute would be resolved in an eventual court or referee proceeding. HMA also contends that from the perspective of the trial court, the Statutory Option was sufficient to allow the

---

[8] Civil Code section 1794, subdivision (c) states, "If the buyer establishes that the failure to comply was willful, the judgment may include . . . a civil penalty which shall not exceed two times the amount of actual damages." Civil Code section 1794, subdivision (e)(1) states, "Except as otherwise provided in this subdivision, if the buyer establishes a violation of paragraph (2) of subdivision (d) of Section 1793.2, the buyer shall recover damages and reasonable attorney's fees and costs, and may recover a civil penalty of up to two times the amount of damages."

11

trial court to eventually compare it to the jury's verdict. According to HMA, because of the jury's special verdict form, it was easily possible for the trial court to determine that Zavala obtained less at trial than what HMA was offering through the Statutory Option. Specifically, the trial court could look at the special verdict form to determine that the jury used a *higher* number for the mileage offset (28,789 vs. 22,878) and it awarded *no* civil penalty multiplier, as compared to the Statutory Option, which offered a penalty of one time Zavala's actual damages. Further, the trial court could rely on the fact that the Statutory Option offered to pay, subject to proof, (1) restitution for "transportation" and "manufacturer-installed options," and (2) "incidental and consequential damages," but the special verdict awarded *nothing* in either of those categories.

Zavala contends that the Statutory Option was not sufficiently specific or certain. For one thing, she argues "the fact that the Statutory Option leaves the settlement amount subject to postoffer litigation is what makes it invalid" because "an offer that promises to pay some unknown amount, subject to some showing of proof *post-offer*, is necessarily unknowable *at the time made*." More specifically, Zavala explains that certain issues regarding the amount of her recovery were, indeed, in dispute between the parties, creating uncertainty in the value of the Statutory Option. For example, in their motions in limine prior to trial, HMA and Zavala took conflicting positions on whether Zavala's expenses for care and maintenance of the vehicle, including repairs, registration fees, and insurance costs were recoverable damages. Zavala also points out that the calculation of incidental and consequential damages depends on "the precise moment at which [HMA's] obligation to repurchase the vehicle arose," which was a disputed issue of fact. (See *Kirzhner v. Mercedes-Benz USA, LLC* (2020) 9 Cal.5th 966,

12

979 (*Kirzhner*) ["registration renewal and nonoperation fees paid after the manufacturer's duty to promptly repurchase or replace the vehicle arises are recoverable as incidental damages incurred in the 'care and custody' of a defective vehicle"].) Not only were those items *actually* in dispute during the litigation, Zavala could not know, at the time she received the Statutory Offer, which items, if any, HMA *would* eventually choose to dispute. As Zavala summarized her position in her trial court briefing, "[a] settlement offer that essentially tells the reader they must go to trial to determine the settlement amount is clearly a 'moving target' and is literally no different than simply going to trial."

Zavala's position has merit. Because the Statutory Option did not contain any specific monetary amounts and left the value of the offer "[s]ubject to proof" to be provided by Zavala, with any disputes to be resolved through a court proceeding, Zavala was not "able to clearly evaluate the worth of the extended offer." (*Berg*, *supra*, 120 Cal.App.4th at p. 727.) At most, the Statutory Option provided certainty about only two of the issues that would need to be resolved before the total amount of the settlement was calculated: the amount, if any, of the civil penalty under Civil Code section 1794, subdivisions (c) and (e), and the amount of the statutory mileage offset required under Civil Code section 1793.2, subdivision (d)(2)(C)). However, resolution of those items was not sufficient to provide specificity and certainty about the *total* value of the offer when all of the other relevant components that would make up the ultimate recovery remained unspecified and their amount and applicability may have been disputed by HMA.

The Statutory Option was also invalid because it was too uncertain "to allow the court to determine whether the judgment [was] more favorable than the offer." (*Fassberg*, *supra*, 152 Cal.App.4th at p. 764.) Despite

13

resolving the mileage offset and civil penalty issue, the Statutory Option lacked any specific monetary amounts for either the restitution award or any incidental or consequential damages. In assessing whether the Statutory Option was sufficiently specific to trigger cost shifting under section 998 we evaluate its validity and attempt to assess its value based on the information available at the time it was served. (*Smalley*, *supra*, 87 Cal.App.5th 450, 455; *Valentino*, *supra*, 201 Cal.App.3d at p. 698.) Accordingly, we cannot look to the specific monetary amounts *eventually* identified by the jury in the special verdict form to conclude that HMA *must have been* offering to pay Zavala those amounts when it made the Statutory Option.

The Statutory Option is very similar to the offer that we determined to be invalid in *Etcheson, supra*, 30 Cal.App.5th 831. In *Etcheson*, the defendant made an offer under section 998 in a lawsuit brought under the Song-Beverly Act to obtain recovery for a defective vehicle. The defendant stated in its offer that "it did 'not have the information necessary to compute the appropriate amount of restitution . . . or the amount of attorney fees and other costs,' but committed 'to pay the full amounts owed pursuant to the relevant code sections.' " (*Id*. at p. 836.) Specifically, the offer was " 'to make restitution pursuant to . . . [Civil Code] section 1793.2[, subdivision] (d)(2)(B) in an amount equal to the actual price paid for the vehicle, including any charges for the transportation and manufacturer-installed options, but excluding nonmanufacturer items installed by a dealer or the buyer, and including any collateral charges such as sales tax, license fees, and registration fees less an amount directly attributable to plaintiffs' use of the vehicle between the date they purchased the vehicle and the date on which the vehicle was first presented to an authorized Chrysler repair facility for repairs that gave rise to the nonconformity alleged in the complaint as

14

calculated pursuant to . . . section 1793.2[, subdivision] (d)(2)(C) . . . [and] to pay reasonable costs, expenses and attorneys' fees based on actual time expended up to the date of this [section 998 offer], pursuant to . . . [Civil Code] section 1794[, subdivision] (d).' " (*Etcheson*, at p. 836, fn. 4.) The plaintiffs rejected the offer and ultimately prevailed in a settlement for nearly double the value of the rejected offer. (*Id*. at pp. 834, 843.)

The issue we decided in *Etcheson* is whether the trial court abused its discretion in drastically reducing the amount of the plaintiffs' attorney fee award based on its conclusion that the plaintiffs were not reasonable in continuing to litigate the case after the defendant made the offer to compromise under section 998. In making its ruling, the trial court agreed that the defendant's offer "was vague" and therefore would not have been valid to trigger cost shifting under section 998. (*Etcheson, supra*, 30 Cal.App.5th at p. 839.) Nevertheless, the trial court concluded that the fees incurred by the plaintiffs after the defendant made the section 998 offer were not " ' "reasonably incurred" ' " because the defendant was attempting to settle the case. (*Ibid*.) We concluded that the trial court abused its discretion because it relied on the plaintiffs' rejection of an offer that was "unacceptable" in that it was "insufficiently specific." (*Id*. at p. 846, citing *MacQuiddy v. Mercedes-Benz USA, Inc.* (2015) 233 Cal.App.4th 1036, 1050 (*MacQuiddy*); *Chen v. Interinsurance Exchange of the Automobile Club* (2008) 164 Cal.App.4th 117, 121–122.)

The Statutory Option presented by HMA to Zavala suffers from the same lack of specificity as the offer in *Etcheson, supra*, 30 Cal.App.5th 831. As in *Etcheson*, HMA offered to pay to Zavala the amount that she would be entitled to recover under the applicable provisions of the Song-Beverly Act, but it did not provide any specific monetary amounts. (*Id*. at p. 836.) As in

15

*Etcheson*, such an offer is "unacceptable" because it is too vague to trigger cost shifting under section 998. (*Etcheson*, at p. 836.)

Moreover, the Statutory Option is very similar to one of the two alternative offers made in *Gorobets v. Jaguar Land Rover North America, LLC* (2024) 105 Cal.App.5th 913 (*Gorobets*)—an opinion recently issued by our colleagues in the Second District. In *Gorobets*, the defendant's first alternative offer to settle the plaintiff's Song-Beverly Act lawsuit was to pay restitution pursuant to the applicable statutory provisions (but waiving any mileage offset), along with any incidental and consequential damages. (*Gorobets*, at p. 922.) The plaintiff would establish the amounts he was to receive under the settlement by submitting proof to the defendant, and any disputed amounts would be resolved in a court proceeding or by a referee. (*Ibid.*) In the alternative, the defendant offered to pay $85,000. (*Ibid.*) *Gorobets* concluded, "an offer to pay amounts to which an offeree is statutorily entitled and to shunt any disputes over entitlement to those amounts to a third party arbiter is not sufficiently certain to be valid under section 998." (*Id.* at p. 931.) Although, we take issue with some of *Gorobets*'s analysis, we are in agreement with its conclusion that such an offer is invalid to trigger cost shifting.

HMA contends that other case law has validated the type of settlement offer reflected in the Statutory Option. HMA primarily relies on *Kirzhner*, *supra*, 9 Cal.5th 966. In that case, our Supreme Court decided that registration renewal expenses and nonoperation fees are recoverable as incidental damages in a suit brought regarding a defective vehicle under the Song-Beverly Act. (*Id.* at p. 977.) The appeal in *Kirzhner* arose after the parties entered into a settlement in which the plaintiff accepted the defendant's statutory offer to compromise under section 998. (*Id.* at p. 970.)

16

The defendant's offer in *Kirzhner* was similar to the Statutory Option because it did "not specify a monetary amount it offer[ed] to pay [plaintiff] to settle the case. Instead, the offer set[ ] forth verbatim the replacement and restitution remedies provided by the [Song-Beverly] Act and state[d] that [the defendant would] furnish one or the other of the remedies in exchange for the vehicle. The offer further state[d] that the precise amount of restitution, including any collateral charges and incidental damages, [would] 'be determined by court motion if the parties cannot agree.' " (*Ibid*.) The trial court entered judgment in accordance with the terms of the offer, but because the parties could not agree on the total amount the defendant was required to pay in restitution, the court entertained a postjudgment motion to determine the amount owed, employing the dispute resolution procedure the parties had specified in their settlement agreement. (*Ibid*.)

In *Kirzhner*, the issue before our Supreme Court was whether the trial court erred in excluding registration renewal expenses and nonoperation fees in calculating the restitution award. Because the plaintiff in *Kirzhner* accepted the defendant's offer, the cost shifting provisions of section 998 were not at issue in the appeal. Our Supreme Court in *Kirzhner* was not called upon to decide whether the offer in that case would have been valid for the purpose of triggering cost shifting under section 998, had the plaintiff rejected it, and *Kirzhner* gave no indication as to how it would decide that issue if it were presented. The mere fact that the trial court entered judgment based on the parties' settlement agreement does not mean that the defendant's offer was valid for the purpose of triggering cost shifting under section 998 because "[a]t no time during the entire process leading to entry of a section 998 judgment does a judge or jury ever consider the validity of the agreement." (*Pazderka v. Caballeros Dimas Alang, Inc.* (1998)

17

62 Cal.App.4th 658, 667.) As " 'it is axiomatic that cases are not authority for propositions not considered' " (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1160), HMA's reliance on *Kirzhner* to establish the validity of the Statutory Option is unfounded.[9]

HMA also relies on case law holding that a section 998 offer is sufficiently specific even though it provides for the payment of one of the parties' attorney fees based on the Song-Beverly Act's attorney fee provision (Civ. Code, § 1794, subd. (d)) but leaves open the amount of those fees. (See *Covert v. FCA USA, LLC* (2022) 73 Cal.App.5th 821, 838 (*Covert*).) HMA contends that the Statutory Option is like an offer that leaves open the amount of attorney fees for future resolution because, like such an offer, the

---

[9] To establish the validity of the Statutory Option, HMA also relies on *MacQuiddy*, *supra*, 233 Cal.App.4th 1036. In that case, the defendant's offer to compromise was similar to the Statutory Option in that it offered to repurchase the plaintiff's vehicle "in an undamaged condition, save normal wear and tear, for the amount of the vehicle down payment, any and all payments made, and the amount of [p]laintiff's outstanding loan obligation related to the purchase of the subject vehicle, if any, as well as any collateral charges and incidental costs in accordance with Civil Code §1793.2(d)(2)(B), less a reasonable mileage offset in accordance with Civil Code §1793.2(d)(2)(C), all to be determined by court motion if the parties cannot agree." (*Id*. at p. 1041.) The defendant further offered to pay plaintiff's "recoverable court costs, expenses, and reasonably-incurred attorney fees pursuant to Civil Code §1794(d) to be determined by the Court by way of a noticed motion," and the defendant "would not be liable for a multiplier greater than 1.0." (*Ibid*.) *MacQuiddy* concluded that the offer was invalid because it was not sufficiently certain. In reaching this conclusion, *MacQuiddy* specifically "focus[ed] on one term in the section 998 offer as particularly undefined," namely that "it limited compliance to repurchase of the car, 'in an undamaged condition, save normal wear and tear.' " (*Id*. at p. 1050.) Because *MacQuiddy* found this provision caused the offer to be invalid, it did not analyze whether any of the other features of the offer were also vague and uncertain. (*Ibid*.) Accordingly, *MacQuiddy* does not assist HMA in establishing the validity of the Statutory Option.

18

Statutory Option stated that recovery would be pursuant to the Song-Beverly Act but did not state a specific monetary amount. We reject the argument.

It is true, as Zavala points out, that leaving open the exact amount of attorney fees a plaintiff will recover under a settlement agreement, subject to proof, does not make the offer too uncertain to trigger the cost shifting provisions of section 998. (*Elite Show, supra,* 119 Cal.App.4th at pp. 269–270; *Seever v. Copley Press, Inc.* (2006) 141 Cal.App.4th 1550, 1561; *Covert, supra,* 73 Cal.App.5th at p. 838.) After all, "a settlement offer that includes an agreement to pay reasonable attorney fees is analogous to the inclusion of an award of unspecified costs in a judgment, a very commonplace occurrence." (*Elite Show*, at p. 269.) "[C]ourts are frequently asked to determine the reasonableness of attorney fees and do so on the basis of declarations rather than live testimony and at hearings that are usually short in duration." (*Id.* at p. 270.) However, leaving open the *ancillary* issue of the exact amount of fees that plaintiff will recover is radically different from leaving open the *central* terms of the settlement itself, as in the Statutory Option. As *Gorobets* observes, "[*n*]o case has held that a section 998 offer is valid if it leaves resolution of *core* components of damages to a third party arbiter." (*Gorobets, supra,* 105 Cal.App.5th at p. 934, second italics added.) It is one thing for a defendant to make a specific and certain settlement offer but to leave open the amount of attorney fees that it will pay to the plaintiff. It is quite another thing for a defendant to make an offer to settle by paying the plaintiff only the amount she can subsequently prove she is statutorily entitled to recover in restitution and for incidental and consequential damages. The value of such an offer is far too vague and uncertain to trigger cost shifting under section 998.

19

In sum, we conclude that although the $65,000 Option was sufficiently specific and certain to be valid if it was a stand-alone offer, the Statutory Option was not. Accordingly, we reject HMA's argument that the 998 Offer was valid on the ground that both of its parts were sufficiently specific and certain.

2. *The Presence of the $65,000 Option Makes the 998 Offer Valid Because the Two Options in the 998 Offer May Be Separately Considered to Determine Whether Cost Shifting Was Triggered*

We next consider HMA's contention that, even if the Statutory Option was not sufficiently specific and certain, the presence of the separately valid $65,000 Option operated to trigger cost shifting under section 998.

We begin our analysis with the observation that HMA's 998 Offer unambiguously contained two separate and distinct options. Zavala could choose to accept *either* the $65,000 Option *or* the Statutory Option, but not both. Or she could reject both options. As a practical matter, therefore, HMA made two separate simultaneous settlement offers to Zavala.

As a preliminary issue, we must address whether a party is permitted to make multiple simultaneous offers to compromise and still invoke section 998's cost shifting provisions. Section 998 simply states that "any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time." (§ 998, subd. (b).) It says nothing about a prohibition on multiple simultaneous offers. Under generally applicable principles of contract law, an "offer may contain a choice of terms from which the offeree is given the right to make a selection in his acceptance," and the "acceptance of one alternate proposition constitutes a binding contract." (*H.S. Crocker Co. v. McFaddin* (1957) 148 Cal.App.2d 639, 645.) As we will explain, Zavala has identified no persuasive reason why that general

20

principle should not apply here to allow HMA to make an offer to compromise that contains two separate and alternative options. (See *Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1022 (*Martinez*) ["because section 998 involves the contractual process of settlement and compromise, general contract law principles may properly govern the statutory offer and acceptance process so long as they 'neither conflict with the statute nor defeat its purpose' "].)

Zavala relies on this court's opinion in *Duff v. Jaguar Land Rover North America, LLC* (2022) 74 Cal.App.5th 491 (*Duff*) to argue that if a party makes simultaneous section 998 offers, both offers are invalid to shift costs. According to Zavala, under *Duff*, "offers that require the offeree to choose between two options are infirm because they make the offer's value a moving target. Whether each of those options is separately ascertainable is irrelevant." As we will explain, Zavala's reliance on *Duff* is not persuasive because the settlement communication in *Duff* contained only a *single* offer, not separate simultaneous offers.

In *Duff*, "[t]he offer provided that [the defendant] would repurchase the vehicle for $28,430.80 or greater than that amount if [plaintiff] 'provide[d] documentation to show the amount is more than $28,430.80.' " (*Duff, supra,* 74 Cal.App.5th at p. 496.) Thus, if the plaintiff accepted that *single* offer, the amount to be paid to him by the defendant would depend on whether he could provide documentation to convince the defendant that he was entitled to more than $28,430.80. We accordingly concluded in *Duff* that the value of the offer, if the plaintiff were to accept it, would be "a moving target." (*Id.* at p. 500.) We explained that the value of the offer was " 'not sufficiently specific" because " 'judgment could be for $28,430.80 or for some higher

21

amount that is subject to proof.' " (*Ibid*.) Therefore, the offer was not valid to trigger cost shifting under section 998.

Here, in contrast to Duff, *supra*, 74 Cal.App.5th 491, HMA extended *two* distinct offers in its settlement communication to Zavala on February 6, 2019. The 998 Offer in this case did not contain a moving target, but rather two separate offers that could be separately evaluated (1) to determine their validity; and (2) to determine whether they exceeded the amount eventually recovered by Zavala.

In considering whether separate simultaneous offers are permitted, we must also address *Gorobets*'s discussion of that issue. *Gorobets* concluded that "simultaneous offers to the same party are not effective under section 998." (*Gorobets, supra*, 105 Cal.App.5th at p. 928.) It reasoned that a settlement communication containing two separate alternatives for the opposing party to choose between is invalid and uncertain because, at the end of the litigation, the trial court will be unable "to determine 'whether the judgment is more favorable than the offer.' " (*Ibid*.) According to *Gorobets*, simultaneous offers are ineffective to shift costs because "they are too uncertain for the trial court, at the back end, to determine whether the judgment was better or worse than the multiple valid offers." (*Id*. at p. 934.) *Gorobets* illustrated its point with a hypothetical scenario in which a party makes simultaneous settlement offers of $100,000 and $200,000, with the eventual verdict amounting to $150,000. (*Id*. at p. 929.) As *Gorobets* viewed that situation, the trial court would not know whether the amount of the verdict exceeded the amount of the offer to compromise because the trial

22

court would not know whether to compare the verdict to the $100,000 offer or the $200,000 offer.  (*Ibid.*)[10]

We do not share *Gorobets*'s concern.  When faced with two simultaneous offers, a trial court can simply look at each offer *separately* to determine whether *either* of them exceeded the amount of the verdict.  In the hypothetical posed by *Gorobets*, because the $200,000 offer exceeded the $150,000 verdict, that offer would operate to shift costs, but the $100,000 offer would not.

We accordingly disagree, respectfully, with *Gorobets*'s conclusion that "simultaneous offers are generally invalid" to shift costs.  (*Gorobets, supra*, 105 Cal.App.5th at p. 936.)  When, as here, a defendant has extended multiple simultaneous settlement offers under section 998, a trial court may separately evaluate each offer to determine (1) whether it is sufficiently specific and certain to be valid for triggering cost shifting under section 998; and (2) if it is a valid offer, whether the plaintiff obtained a more favorable judgment or award.  If the plaintiff's judgment or award is less than the highest valid offer, "the plaintiff shall not recover . . . postoffer costs and shall

---

10    After concluding that simultaneous alternative offers are invalid to shift costs under section 998, *Gorobets* nevertheless determined that costs should be shifted in the case before it because it had determined that one of the two alternative offers (comparable to our Statutory Option) was invalid. *Gorobets* explained that "if only one offer is independently valid, then the trial court can apply section 998 at the back end as to that offer and the prohibition against simultaneous offers is not implicated." (*Gorobets*, *supra*, 105 Cal.App.5th at p. 930.)  The dissenting justice in *Gorobets* took issue with that approach, although agreeing that simultaneous offers were invalid to shift costs. (*Id*. at p. 937.)  Because we are rejecting the contention that simultaneous offers are invalid to shift costs, there is no need for us to weigh in on whether a subsequent determination that one of the offers is invalid serves to resurrect the validity of the remaining offer.

23

pay the defendant's costs from the time of the offer." (§ 998, subd. (c)(1).) A trial court's task will not be unduly onerous because we have no doubt that the parties will, during proceedings to award costs, focus the court on the relevant valid offer that is claimed to have triggered cost shifting under section 998.

The approach of separately analyzing multiple simultaneous offers to determine whether each, in itself, is valid, is consistent with the purpose of section 998. " 'The policy behind section 998 is 'to encourage the settlement of lawsuits prior to trial.' " (*Martinez, supra*, 56 Cal.4th at p. 1019.) As our Supreme Court has explained, " '[t]he more offers that are made, the more likely the chance for settlement.' " (*Id*. at p. 1020.) Further, "our Supreme Court has held that the legislative purpose of section 998 is generally better served by 'bright line rules' that can be applied to these statutory settlement offers." (*Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 799; see also *Martinez*, at p. 1021 [discussing case law favoring bright line rules in applying section 998].)

Requiring a court to *separately* evaluate the validity of alternative settlement offers made in the same settlement communication is a useful bright-line rule to apply to statutory settlement offers made under section 998 because it will encourage parties to put all possible approaches to settlement on the table *early* in the litigation. Even if some of those offers at that early stage, before discovery is conducted, might lack the specificity to constitute valid offers for the purpose of triggering cost shifting under section 998, an offeror will be free to include such less specific offers while still remaining confident that its more specific offers will be valid to trigger section 998's cost shifting. Conversely, offerees will be incentivized to seriously consider any offer made at an early stage in the litigation that is

specific enough to be valid under section 998, even if an alternative offer made at the same time might lack specificity.

Another important benefit of the rule we adopt is that it actually simplifies an offeree's evaluation process when the opposing party has served multiple simultaneous settlement offers. Because a trial court would be required to *separately* consider the validity of alternative simultaneous offers when deciding whether cost shifting has been triggered, an offeree can take comfort that any individual offer that is insufficiently specific and certain will *not* be treated as valid for triggering cost shifting under section 998, even if it is accompanied by another more specific offer.[11] Less specific offers can simply be ignored, without penalty, if the offeree elects to do so. An offeree will not be penalized under section 998 for failing to accept a vague and uncertain offer made simultaneously with a valid specific offer. But if the offeree ends up deciding that the vague and uncertain offer is nevertheless attractive and favorable, the offeree may always proceed to accept that offer (as in *Kirzhner*, *supra*, 9 Cal.5th 966), increasing the chances of an early resolution of the lawsuit.

---

[11] Any ambiguity in a section 998 offer is construed against the offeror. (*Ignacio*, *supra*, 2 Cal.App.5th at p. 86.) Therefore, to ensure that multiple simultaneous offers are separately evaluated for validity, an offeror must *clearly* specify in the settlement communication that separate and alternative offers are being extended, including a provision describing how the offeree can indicate which offer is being accepted. (See § 998, subd. (b) ["The written offer shall include a statement of the offer, containing the terms and conditions of the judgment or award, and a provision that allows the accepting party to indicate acceptance of the offer by signing a statement that the offer is accepted."].) Otherwise, the offer may be invalid under *Duff* because an offeree could construe it as a single offer with an uncertain value. (*Duff*, *supra*, 74 Cal.App.5th at p. 500.)

25

Zavala posits an unwanted scenario in which an offeree will be inundated with "countless options" in each settlement communication, "including many that might not be reasonably ascertainable," causing the offeree to race to figure out the value of each offer before the 30-day acceptance period expires. Similarly, *Gorobets* predicts that "particularly Machiavellian litigants will be sure to cover the waterfront by making simultaneous offers for all possible outcomes in an attempt to ensure that at least one of those offers will trigger cost shifting under section 998." (*Gorobets*, *supra*, 105 Cal.App.5th at p. 929.) In our view, those concerns are not well-founded, and any downsides are outweighed by the benefit of promoting early settlement. If a situation ever arises in which a party makes multiple simultaneous offers for the principal purpose of overwhelming an opponent or in an effort at gamesmanship, rather than in a genuine attempt to reach a settlement, that party will risk running afoul of the rule that a section 998 offer made in bad faith is not valid to shift costs. (*Rojas, supra,* 93 Cal.App.5th at pp. 892–893; see also *Smalley*, *supra*, 87 Cal.App.5th at p. 459 [discussing inquiry to determine whether an offer was made in good faith].)

Applying the bright-line approach here of separately considering the validity of the two simultaneous statutory offers to compromise, we independently consider the validity of the $65,000 Option and the Statutory Option. As we have explained, the Statutory Option is invalid to trigger cost shifting, as it is not sufficiently specific or certain. However, the $65,000 Option is specific and certain and is therefore valid to trigger cost shifting. Because Zavala failed to obtain a recovery at trial that was more favorable than the $65,000 Option, the trial court should have concluded that Zavala

was *not* entitled to recover her postoffer costs and was required to pay HMA's costs from the time of the offer. (§ 998, subd. (c)(1).)

The trial court's orders on Zavala's motion for attorney fees and the parties' competing motions to tax costs were premised on the trial court's erroneous conclusion that the HMA's 998 Offer was not valid to shift costs under section 998. Accordingly, we reverse those orders, as well as the May 19, 2023 judgment in favor of Zavala in the amount of $276,104.61 that was based on those orders, and we remand for further proceedings consistent with this opinion.

## DISPOSITION

We reverse the trial court's orders (1) granting Zavala's motion for attorney fees; (2) granting Zavala's motion to tax HMA's costs; and (3) granting in part HMA's motion to tax Zavala's costs. We also reverse the trial court's May 19, 2023 judgment in favor of Zavala in the amount of $276,104.61, which was based on those orders. This matter is remanded for further proceedings consistent with this opinion. The parties shall bear their own costs on appeal.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.

27